## COX *v.* HART.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 828. Submitted January 4, 1892. — Decided May 16, 1892.

The granting or refusing of an application for continuance by the court below is not subject to review here.

Whether an affidavit that one of the deeds relied on in the chain of title is forged, filed in an action of trespass to try title in Texas, for the purpose of obtaining a continuance, is such an affidavit as would, under Rev. Stats. Texas, art. 2257, affect its admissibility in evidence, *quære.*

When both parties in an action to try title to real estate claim under a common source of title, it is unnecessary to consider whether the deed under which the common grantor claimed was valid.

Every reasonable inducement will be made in favor of a judicial sale, so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish.

Where it is doubtful to which of two tracts of land in the same neighborhood, both the property of the execution debtor, the description in the marshal's deed applies, extrinsic evidence may be admitted to show which was intended, and the question left to the jury under proper instructions.

The Texas statutes making provision for an allowance for improvements, in actions of trespass to try title, are intended to secure to the possessor in good faith compensation for his improvements, either by direct payment therefor by the owner of the land, or by giving him an opportunity to take the land at its assessed value, where the plaintiff elects not to pay for the improvements and keep the land; but they do not confer upon such possessor the right to an execution for the assessed value of the improvements at the expiration of a year.

THE case is stated in the opinion.

*Mr. J. B. Scarborough* and *Mr. Eugene Williams* for plaintiffs in error.

*Mr. W. Hallett Phillips* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an action of trespass to try the title to certain lands in McLennan County, Texas, the boundaries of which are fully given in the pleadings and in the judgment. They are also described generally as "being the same tract of land patented by the State of Texas to the heirs of James Stewart, on the 2d day of July, 1849, by patent No. 379, volume 5."

On the 2d day of July, 1849, the State issued "to the heirs of James Stewart, deceased, their heirs and assigns," two patents, each for 960 acres of land, in McLennan County; patent "No. 379, vol. 5," describing the land embraced in it as "being in Milam district, on the waters of Bull Hide Creek and Cow Bayou, about 12½ miles S. W. from Waco village, by virtue of bounty warrant No. 308, issued to James Stewart

by William G. Cook, Adjutant General, on the 9th day of August, 1847," etc.; and patent "No. 380, vol. 5," describing the land embraced in it as being in "Milam district on Bull Hide Creek, about eleven miles S. W. by S. from Waco village, by virtue of bounty warrant No. 308, issued by William G. Cook, Adjutant General, on the 9th day of August, 1847," etc. The relative situation of the two tracts to each other appears from the above copy of a map proven to be a correct draft from a report of survey made under the order of court:

The defendant J. P. Williams filed a disclaimer of any title to the lands here in dispute, but alleged that he held a portion of them under a certain lease from the defendant Cox. Other defendants answered by demurrer, general denial, pleas of not guilty, and limitation, and some of them suggested improvements made in good faith, for the value of which, in the event the plaintiff succeeded in the action, they asked judgment under the statute of Texas.

The jury found that the appellee Hart, the plaintiff below, was entitled to the land in controversy; that the defendant Cox had made valuable improvements upon seven hundred acres of it, worth $6250, and the defendant Echols on three hundred and twenty-five acres of it, worth $3750; that the plaintiff was not entitled to rents; and that, without the improvements, the lands held by Cox were worth $10,500, those held by Echols $4875.

In conformity with the verdict, it was adjudged that the defendants Cox and Echols were possessors in good faith of the lands held by them, respectively; that no writ of possession should issue for those tracts before the expiration of one year from the date of the judgment unless the plaintiff paid to the clerk of the court for Cox the sum of $6250, and for Echols the sum of $3750, with interest; that, if he neglected for one year to pay such sums, with interest from the date of the judgment, and, if Cox and Echols, within six months after the expiration of the year, paid to the clerk — Cox, the sum of $10,500, and Echols the sum of $4875 — then the plaintiff should be forever barred of his writ of possession as against

the defendant so paying, and from maintaining any action whatever against Cox and Echols, respectively, for the above described tracts; that if. Cox and Echols did not within six months after the expiration of one year from the judgment pay to the clerk the above respective sums for the plaintiff as above provided, writs of possession might issue in his favor against Cox and Echols or against the defendant so failing for the lands recovered by plaintiff in this action; and that writs of possession issue, as provided by law in ordinary cases, in favor of the plaintiff against all of the defendants for the lands recovered by him in this action, except the tracts adjudged to be held in good faith by Cox and Echols.

Motions for new trial and in arrest of judgment having been overruled, a severance was had, upon notice, between the defendants, so that Cox, Tinsley and Echols might prosecute this writ of error separately from their codefendants. The writ of error has been heretofore dismissed as to Echols.

At the trial below the plaintiff, Hart, for the purpose of showing title in himself, introduced in evidence a copy of patent No. 379 to the heirs of James Stewart, followed by proof, in the deposition of Mrs. Catharine Stewart, that the only heirs of James Stewart, on the 12th of April, 1854, were William H. Stewart and John T. Stewart, and that they were dead, Mrs. Stewart surviving them; a certified copy from the clerk's office of McLennan County of a deed by William H. Stewart, John T. Stewart and Catharine Stewart, wife of William H. Stewart, dated April 12, 1854, purported to convey to John De Cordova the land embraced in patent No. 379, which deed was filed for record May 8, 1854, and recorded two days afterwards; the original of a deed, dated September 7, 1858, by the marshal of the United States for the Western District of Texas to Edmond J. Hart, Barnett B. Hart and Isaac N. Marks, which, it was claimed, conveyed all the right, title and interest of De Cordova, in the land in dispute; a deed by B. B: Hart to E. J. Hart, of date July 30, 1874, conveying to the latter all the right, title and interest of the grantor in the partnership property, including real estate, personal property and assets of every description; and a deed from I. N.

Marks to E. J. Hart, of date August 19, 1874, conveying to the latter all the grantor's real estate in Texas or elsewhere.

For the purpose of showing a common source of title with the defendants under De Cordova, the plaintiff also introduced a deed, dated May 29, 1884, from L. B. Davis, administrator of the estate of De Cordova, purporting to convey to Cox 960 acres of land patented to the heirs of James Stewart by patent No. 379; a deed from Cox to Tinsley, dated December 31, 1884, conveying an undivided half interest in the same land; and deeds to Echols from Cox and Tinsley dated September 4, 1885, for 320 acres of the land in controversy.

The defendants introduced in evidence the original of a deed from Mrs. Catharine Stewart, Mrs. Fannie Finnerson, joined by her husband, William H. Finnerson, Virginia Sexton and Josh. H. McAllister to the defendants Cox and Tinsley, acknowledged November 16, 1889, (which was after the institution of this action,) before a notary public in Baltimore, conveying to the grantees therein the land described in patent No. 379; the above deed of 1884, from De Cordova's administrator to Cox, for the purpose, the bill of exceptions states, "of showing in themselves the defendants' title and good faith improvements made on the land since defendants had possession thereof;" the deed from Cox to Tinsley of December 31, 1884, conveying an undivided half of the land; and the deeds from Tinsley and Cox to Echols, of September 4, 1885.

When this case was called for trial there was on file a deposition of Mrs. Catharine Stewart, taken by the plaintiff, as well as a copy of the above deed to De Cordova of April 12, 1854. The defendants moved for a continuance in order that they might take the depositions of Mrs. Stewart and E. J. Hart, Jr.; the motion being based upon two affidavits made by Tinsley. One of those affidavits stated that Tinsley had, then recently, held a conversation with Mrs. Stewart, during which "affiant by her statement was led to believe, and does believe, said deed to be a forgery, and that her evidence concerning the same will be material." The application for a continuance was denied, and that action of the court is assigned for error. But the granting or refusing of such an application

was in the discretion of the court, and its action, in that regard, cannot be reviewed on error. And it is here referred to only because of the supposed bearing upon other assignments of error of Tinsley's affidavit relating to the alleged deed to De Cordova.

The certified copy of what purported to be the deed of April 12, 1854, to De Cordova set out the specific boundaries of the lands in controversy, and, also, described them as lands containing " nine hundred and sixty acres of land situated and being in Milam District, on the waters of Bull Hide Creek and Cow Bayou," and as " the same which were granted to the heirs of James Stewart, deceased, by virtue of bounty land warrant No. 308, issued to James Stewart by William G. Cook, adjutant general, under a patent from the State of Texas, No. 379, issued from the General Land Office upon the twenty-eighth day February, one thousand eight hundred and fifty-four, as by reference thereunto had will more fully and at large appear."

That deed appears to have been signed, sealed and delivered in the presence of two witnesses named, and was certified by E. R. Sprague, commissioner of deeds for the State of Texas, resident in Baltimore, to have been personally acknowledged before him by the several grantors, to be their act and deed, (they being known to him as the individuals described as and professing to be the parties of the first part,) and that Catharine Stewart, being examined out of the presence and hearing of her husband, stated that she executed the same freely, voluntarily and without being induced to do so by fear, threats, ill usage or the displeasure of her husband. On the copy introduced there was no scroll or character showing that the commissioner affixed his seal to the original.

To the introduction of the copy the defendants objected, in different forms, and at various stages of the trial, substantially upon these grounds: 1. There was on file an affidavit of forgery, meaning Tinsley's affidavit used on the application for a continuance of the case. 2. It was not proven as an ancient instrument, because there was no evidence of possession, payment of taxes, or other act by any claimant under the deed, or

by any one else, to free it from just grounds of suspicion or to lead the minds of the jury or the court to a conclusion of its genuineness, nor was there any accounting for the absence of the seal from the certificate of the commissioner, Sprague, before whom it purported to have been executed. 3. The proof does not show its execution as required under the affidavit of forgery.

After the evidence on both sides was concluded, but before the final submission of the case to the jury, the court stated its view of the law to be that, as no proof had been offered of any act or assertion of ownership under the deed from the heirs of James Stewart to De Cordova, that deed could not be read as an ancient document; in which event the defendants were entitled to a verdict. But, at a subsequent stage of the trial, the court announced that, on further consideration, it was of opinion that "where a common source was shown a party could not go back of the common source to impeach a deed for forgery," and that "the defendants having themselves offered the deed from De Cordova's administrator to Cox, and Cox to Tinsley, and from both to Echols, were concluded on the question of common source and estopped to deny the genuineness of the deed from James Stewart's heirs to De Cordova, or it was immaterial whether said deed was genuine or not."

Upon the subject of title, the court charged the jury: "This is a suit to recover land as described in plaintiff's petition. He has introduced in evidence a chain of title from the government to him in support of his claim. If the description in the marshal's deed to Hart and his partners named in the deed described the land that the plaintiff has sued for, the plaintiff is entitled to recover. The only question as to their title in issue before you is whether the land they sue for is the land described in the marshal's deed. The description, you will bear in mind, is 'a certain tract or parcel of land containing, by estimation, 898 acres, lying in Milam district, in McLennan County, on Cow Bayou and Bull Hide streams, patented to the heirs of James Stewart for 960 acres.' The proof develops that there are two tracts of land patented to

the heirs of James Stewart, each for 960 acres. The position of defendants is that this description applies as well, if not better, to the eastern James Stewart No. 380, but plaintiff contends that it does not. Whether the marshal's deed is a deed to No. 379 is the question for you to determine; whether it is described with sufficient distinctness, taking the description in the patent and deed; it conveys the whole grant, if it conveys any. The amount of land, the number of acres, being different in the deed from that in the patent, you are only to consider as a circumstance in connection with all the other proof in your inquiry as to whether the description in the marshal's deed does describe either one of the two James Stewart surveys. The burden is on the plaintiff. You must be satisfied from the proof given that No. 379, the western Stewart grant, is the land described in the marshal's deed before you can find for the plaintiff. If the proof satisfies you that the land the marshal describes in his deed as lying on Bull Hide and Cow Bayou streams is the western Stewart No. 379, then the plaintiff is entitled to recover; if otherwise, the plaintiff cannot recover and your verdict must be for the defendants," etc. To this charge the defendants excepted.

Was the deed to De Cordova of April 12, 1854, admissible as evidence in behalf of the plaintiff? The statutes of Texas provide that every instrument of writing which is permitted or required by law to be recorded in the office of the clerk of the county court, and which has been or may be so recorded after being proven or acknowledged in the manner provided by the laws in force at the time of its registration, shall be admitted as evidence without the necessity of proving its execution, *provided* " the party who wishes to give it in evidence shall file the same among the papers of the suit in which he proposes to use it, at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party or his attorney of record; and unless such opposite party, or some other person for him shall, within three days before the trial of the cause, file an affidavit that he believes such instrument of writing to be forged." Rev. Stats. Texas, 1879, Art. 2257, p. 330.

The only affidavit in the record was that of Tinsley filed in support of the application for a continuance. It may well be doubted whether that was such an affidavit as the statute requires in order to impeach a deed. It was not filed for the specific purpose of attacking the genuineness of the deed of 1854, when it should be offered in evidence, but only to obtain a postponement of the trial. There is ground for holding that after being used for that purpose the affidavit had fully performed its functions, and could not be regarded further as attacking that deed. *Stribling* v. *Atkinson*, 79 Texas, 162, 164.

But without deciding this point, we pass to the consideration of another question which seems to be controlling. The statutes of Texas regulating the pleadings and practice in actions of trespass to try title provide : " It shall not be necessary for the plaintiff to deraign title beyond a common source, and proof of a common source may be made by the plaintiff by certified copies. of the deeds showing a chain[1] of title to the defendant emanating from and under such common source ; but before any such certified copies shall be read in evidence they shall be filed with the papers of the suit three days before the trial and the adverse party served with notice of such filing as in other cases ; *provided,* that such certified copies shall not be evidence of title in the defendant unless offered in evidence by him, and the plaintiff shall not be precluded from making any legal objection to such certified copies or the originals thereof when introduced by the defendants." Rev. Stats. Texas, 1879, Title 96, c. 1, Art. 4802. In *Keys* v. *Mason*, 44 Texas, 140, 142, 143, the court refers to the different modes in which the plaintiff may make a *prima facie* case as against the possession of the defendant, among which is to prove " that defendant and himself claim the land under a common source of title and that his is the better right or superior title under such

---

[1] In Sayles's Texas Civil Statutes, vol. 2, p. 636, and in some of the decisions of the Supreme Court of Texas, referring to this statute, this word is " claim ; " but the original act of September 28, 1871, used the word " chain." Texas Laws 1871, p. 3.

common source. Proof of title by the plaintiff in either mode may not conclusively establish his right to the land against the defendant, but it overcomes the presumption of right from his possession, and throws upon him the burden of disproving the plaintiff's case or showing a superior title in himself; as, for example, that he holds a title from the sovereignty of the soil of older date or superior right to that of the plaintiff; that by a subsequent possession to that on which plaintiff counts he has title by prescription, or has barred the plaintiff's right of recovery; or, though he has a title under a common source with plaintiff, he also has, or there is outstanding in a third party, a superior title to that which they claim from the common source, which it must not appear that he is estopped from setting up." In *Crabtree* v. *Whiteselle*, 65 Texas, 111, 115, which was an action of trespass to try title to land which had been partitioned among a mother and her children, the part in controversy falling to the mother, the court said: "If there was a mistake in the partition, by which she got more than her share, still what she got was the land in controversy, and by agreeing that she was the common source of title, the appellant is precluded from claiming any interest in the land not derived from her." Again, in *Burns* v. *Goff*, 79 Texas, 236, 239 : "The rule which renders it unnecessary for a plaintiff to deraign title beyond the common source is one of convenience, and does not deprive a defendant of the right to show that he has the superior right through the common source or otherwise. The statute provides that 'proof of a common source may be made by the plaintiff by certified copies of a deed *showing a claim of title to the defendant* emanating from and under such common source.' When a deed is introduced which shows such a claim by a defendant, that is sufficient, although the deed may be for some cause inoperative. If a defendant claims through a purchaser under execution against a plaintiff, the sheriff's deed may not for some cause pass the title, yet such a deed will be sufficient evidence of common source, and the plaintiff need not deraign title beyond himself as common source. . . . If defendant has superior right to the land, whether

this arises from adverse possession or other fact, this he is not precluded from showing; but, in the absence of some evidence on his part, tending to show such superior right, the plaintiff would be entitled to recover on proof of claim of title emanating from and under the common source, made in the manner prescribed by the statute." See also *Pearson* v. *Flanagan*, 52 Texas, 266, 279; *Stegall* v. *Huff*, 54 Texas, 192, 197; *Sellman* v. *Hardin*, 58 Texas, 86; *Calder* v. *Ramsey*, 66 Texas, 218, 219.

These adjudications make it clear that it was not necessary for the plaintiff — even if Tinsley's affidavit for continuance was sufficient as an affidavit of forgery under Art. 4802 — to prove the genuineness of the alleged deed of April 12, 1854, to De Cordova. He claimed under De Cordova, by virtue of the marshal's deed conveying all his right, title and interest in the lands in dispute. The plaintiff introduced the deed from De Cordova's administrator to Cox for the purpose of showing a common source of title with the defendants. The defendants introduced the same deed without disclaiming the title conveyed by it, for the purpose, the bill of exception distinctly states, (and this court must accept that statement as conclusive,) of showing title in themselves, as well as good faith in making improvements. So that, upon this branch of the case — it appearing that the parties claimed under a common source — the law was clearly for the plaintiff, unless the defendants had established a superior right in themselves, or unless the plaintiff had failed to acquire by the marshal's deed the right, title and interest of De Cordova.

In reference to the deed to Cox and Tinsley from Mrs. Stewart and others of November 16, 1889, which was introduced to show a superior title in the defendants — they assuming that the deed of April 12, 1854, was a forgery — it need only be said that there is an entire absence of proof that the grantors in that deed were the heirs either of the patentee, James Stewart, or of William H. Stewart and John T. Stewart. Moreover, we do not find from any of the defendants' numerous requests for instructions that anything was claimed by them, at the trial, on account of the deed of November 16, 1889, obtained just before the commencement of the trial.

So that the vital question in the case is as to the validity of the marshal's deed of September 7, 1858; for that deed, if valid, passed to the plaintiff, before the date of the deed from Davis, administrator, to Cox, the entire interest of De Cor-dova the common source of title; but if, for any reason it was void, and if the deed of April 12, 1854, could not have been read in evidence as an ancient document, the plaintiff must fail for want of sufficient proof that he acquired that interest.

The marshal's deed recites a judgment, rendered on the 24th day of March, 1856, in favor of Edmond J. Hart, Isaac N. Marks and Barnett B. Hart, for $1061.50, and costs, in the District Court of the United States for the Eastern District of Texas, against J. De Cordova, execution upon which was August 16, 1858, levied on (the deed containing no other description of the premises) " a certain tract or parcel of land as the property of said J. De Cordova, containing, by estima-tion, eight hundred and ninety acres of land, lying in Milam Land District and County of McLennan, aforesaid, on Cow Bayou and Bull Hide streams, patented to the heirs of James Stewart for nine hundred and sixty acres." It recites, also, the sale of the land at public auction to the plaintiffs in the execution, and conveys to them, their heirs and assigns for-ever, all the right, title and interest of De Cordova in the land levied on and sold.

The defendants objected to the admission of the marshal's deed as evidence upon the ground that it did not sufficiently describe any land, and, if any, noahthe land embraced by patent No. 379. We are of opinion tahtn the charge to the jury in reference to this deed was unobjectionable. In *White* v. *Luning*, 93 U. S. 514, 523, this court said : "The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistently with legal rules the object they were intended to accomplish." And we do n/ understand that any different rule prevails in Texas. *Kingston* v. *Pickens*, 46 Texas, 99, 101, the court says : " T

construction of a deed, being a matter of law, is for the court. If, therefore, the land intended to be conveyed by it be so inaccurately described that it appears, on an inspection of the deed, the identity of the land is altogether uncertain and cannot be determined, the court should pronounce it void; but when the uncertainty does not appear upon the face of the deed, but arises from extraneous facts, as in other cases of latent ambiguity, parol evidence is admissible to explain or remove it. In such cases the deed should not be excluded from the jury, but should go to them along with the parol evidence, to explain or remove such ambiguity; and the identity of the land is then a mixed question of law and fact, to be determined by the jury under the instructions of the court." So, in *Wilson* v. *Smith*, 50 Texas, 365, 369, the court, referring to a sheriff's deed of land, said: ".Certainly the deed cannot be pronounced void upon mere inspection; for it cannot be said that it appears from the face of the deed that the land conveyed cannot be identified by the aid of extrinsic evidence."

The case of *Brown* v. *Chambers*, 63 Texas, 131, 135, is cited by the defendants in support of their contention. While the court says that no presumption will be indulged in favor of a sheriff's deed for land, that case is not in conflict with previous decisions; for the court says that "the conveyance must contain such a description as will enable the purchaser to find and identify the land," and "if, from the description contained in the sheriff's deed, or deeds or instruments therein referred to, the land can be found and identified with reasonable certainty, then the conveyance will be sustained." It cites with approval the language of a text-writer, who says that "when a deed refers to another deed, or a map, or a survey, it has the effect to incorporate such deed, map or survey into the description, the same as if copied into the deed itself, and what is therein described will pass." Martindale on Conveyances, § 108. See also *Flannegan* v. *Boggess*, 46 Texas, 330, 335; *Norris* v. *Hunt*, 51 Texas, 609, 614; *Steinbeck* v. *Stone*, 53 Texas, 382, 386; *Ragsdale* v. *Robinson*, 48 Texas, 375, 395; *Knowles* v. *Torbitt*, 53 Texas, 557.

The court below could not have said that the marshal's deed was void, upon its face, for uncertainty in the description of the land conveyed. It conveyed 898 acres, by estimation, of land lying in a named land district and county, on "Cow Bayou and Bull Hide streams," which was "patented to the heirs of James Stewart for 960 acres." It could not be assumed, as matter of law, that this land could not be identified. It was for the jury to say, upon all the evidence, whether the land, so conveyed, was that levied upon by the marshal, and described, in patent No. 379 to James Stewart's heirs for 960 acres, as being "in Milam district, on the waters of Bull Hide Creek and Cow Bayou, about twelve and a half miles S. W. from Waco Village," or the 960 acres described in patent No. 380, as being "in Milam district, on Bull Hide Creek, about eleven miles S. W. by S. from Waco Village." An ingenious argument was made to show that the description in the marshal's deed best suited the lands embraced in patent No. 380. But the whole matter was fairly submitted to the jury under the injunction that the plaintiff could not recover unless the proof showed that the land described in patent No. 379, the western Stewart grant, was that conveyed by the marshal's deed. In order to identify the land the jury were entitled to look at the written documents, in connection with the parol evidence. "It is undoubtedly essential," Chief Justice Marshall said, "to the validity of a grant that there should be a thing granted which must be so described as to be capable of being distinguished from other things of the same kind. But it is not necessary that the grant itself should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed." *Blake* v. *Doherty*, 5 Wheat. 359, 362. See also *Reed* v. *Proprs. Merrimack Locks &c.*, 8 How. 274, 288, 289.

For the reasons stated, we think that the marshal's deed was admissible in evidence, and established the plaintiff's right to the lands in dispute as against the defendants.

The defendants asked that if their motions for new trial and in arrest of judgment were overruled, the judgment be amended so as to give them a direct execution against the

plaintiff for the value of their respective improvements, in the event the plaintiff failed to pay for the same within one year from the date of the judgment, and in the event they failed, within six months after the expiration of such year, to pay the plaintiff the assessed value of the land. This motion was denied, and the action of the court thereon is assigned for error.

The statutes of Texas making provision for an allowance for improvements in actions of trespass to try title are as follows:

"ART. 4813. The defendant, in any action of trespass to try title, may allege in his pleadings that he and those under whom he claims have had adverse possession in good faith of the premises in controversy, for at least one year next before the commencement of such suit; and that he and those under whom he claims have made permanent and valuable improvements on the lands sued for during the time they have had such possession, stating the improvements and their value respectively; and stating also the grounds of such claim.

"ART. 4814. Where the defendant has filed his claim for an allowance for improvements in accordance with the preceding article, if the court or jury find that he is not the rightful owner of the premises sued for, but that he and those under whom he claims have made permanent and valuable improvements thereon, being possessors thereof in good faith, the court or jury shall at the same time estimate from the testimony —

"1. The value at the time of trial of such improvements as were so made before the filing of the suit, not exceeding the amount to which the value of the premises is actually increased thereby:

"2. The value of the use and occupation of the premises during the time the defendant was in possession thereof, (exclusive of the improvements thereon made by himself or those under whom he claims,) and also, if authorized by the pleadings, the damages for waste or other injury to the premises committed by him, not computing such annual value for a longer time than two years before suit, nor damages for waste or injury done before said two years:

" 3. The value of the premises recovered, without the improvements made as aforesaid.

" Art. 4815.  If the sum estimated for the improvements exceed the damages estimated against the defendant and the value of the use and occupation as aforesaid, there shall then be estimated against him, if authorized by the testimony, the value of the use and occupation and the damages for injury done by him, or those under whom he claims, for any time before the said two years, so far as may be necessary to balance the claim for improvements, but no further; and he shall not be liable for the excess, if any, beyond the value of the improvements.

" Art. 4816.  If it shall appear from the finding of the court or jury, under the two preceding articles, that the estimated value of the use and occupation and damages exceed the estimated value of the improvements, judgment shall be entered for the plaintiff for the excess and costs in addition to a judgment for the premises; but should the estimated value of the improvements exceed the estimated value of the use and occupation and damages, judgment shall be entered for the defendant for the excess.

" Art. 4817.  In any action of trespass to try title when the lands or tenements have been adjudged to the plaintiff, and the estimated value of the improvements in excess of the value of the use and occupation and damages has been adjudged to the defendant, no writ of possession shall be issued for the term of one year after the date of the judgment, unless the plaintiff shall pay to the clerk of the court for the defendant the amount of such judgment in favor of the defendant, with the interest thereon.

" Art. 4818.  If the plaintiff shall neglect for the term of one year to pay over the amount of said judgment in favor of the defendant, with the interest thereon, as directed in the preceding article, and the defendant shall, within six months after the expiration of said year, pay to the clerk of the court for the plaintiff the value of the lands or tenements without regard to the improvements, as estimated by the court or jury, then the plaintiff shall be forever barred of his writ of posses-

sion, and from ever having or maintaining any action whatever against the defendant, his heirs or assigns, for the lands or tenements recovered by such suit.

"ART. 4819. If the defendant or his legal representatives shall not, within the six months aforesaid, pay over to the clerk for the plaintiff the estimated value of the lands or tenements, as directed in the preceding article, then the plaintiff may sue out his writ of possession as in ordinary cases.

"ART. 4820. The judgment or decree of the court shall recite the estimated value of the premises without the improvements, and shall also include the conditions, stipulations, and directions contained in the three preceding articles, so far as they may be applicable to the case before the court." Rev. Stats. Texas, 1879.

We are of opinion that the motion of defendants Cox and Echols for an execution against the plaintiff was based upon an erroneous interpretation of the statute, the object of which was to concentrate in one person the ownership of the land and of the improvements. The plaintiff, as holder of the title, was given one year within which to pay for such improvements. If he did not do so within that time, then the defendant could take the land, at its assessed value, and forever bar the plaintiff of his writ of possession. If the defendant did not exercise that privilege within the time prescribed, then the plaintiff was entitled to his writ of possession. Under the construction for which the defendants contend, the owner of the land could be improved out of his title by ameliorations for which he did not desire to pay, or for which, perhaps, he was unable to pay. What the statute intended to effect was, to secure to the possessor in good faith compensation for his improvements, either by direct payment therefor by the owner of the land, or by giving him an opportunity to take the land at its assessed value where the plaintiff elected not to pay for the improvements and keep the land. The requirement that, if the defendant or his legal representatives should not, within the time prescribed, pay over to the clerk for the plaintiff the value of the lands or tenements, estimated without regard to the improvements, the plaintiff could sue out his writ of pos-

session as in ordinary cases, necessarily means that, in such a case, (the defendants having elected not to take the land at its assessed value,) the legal title must prevail, and, therefore, the plaintiff should recover the land without paying for the improvements. The statute, so construed, gives a possessor in good faith, who has made valuable improvements, all that he is equitably entitled to demand.

There are no other questions in the case involving the substantial rights of the defendants, or that we deem it necessary to notice in this opinion. We find no error in the judgment, and it must be

*Affirmed.*