[File No. 6813]

AMELIA MITCHELL, Widow of Wallace Mitchell, Deceased, Respondent, v. CLARA NICHOLSON, Adam Koestler, Edwin Koestler, and Elizabeth Blackmore, Appellants.

(3 NW(2d) 83)

Opinion filed March 9, 1942.   Rehearing denied March 28, 1942

*Rees L. Phelps* and *F. E. McCurdy,* for appellants.

*J. N. McCarler,* for respondent.

Burr, Ch. J. This is an appeal from a judgment holding two quit-claim deeds to be null and void; and appellants demand a trial de novo.

The facts are few and simple. On August 1, 1904, the United States granted to Charles Koestler by patent the east half of the south-west quarter, and lots three and four of section 18, township 138, range 71, consisting of 155.25 acres.

On January 18, 1907, Koestler and wife, for the sum of $25, execut-ed and delivered a quitclaim deed to Herman Nather, by means of which they did "remise, release and quitclaim" to Nather "Two acres of land located on the North West corner of the southwest quarter of section eighteen (18), Township one hundred thirty-eight (138) west of Range seventy-one ('71)," agreeing "to warrant and defend." The deed was recorded January 30, 1907. This two-acre tract was never surveyed, nor set forth by metes and bounds. So far as the record shows, Nather never exercised or claimed any dominion over any two-acre tract pur-porting to be conveyed, nor made any use of the same. However, since 1907, on thirteen annual occasions, taxes were paid by Nather in the proportion that the two acres bore to the 155.25 acres conveyed by the United States, amounting in all to $3.25.

During the year 1913, Koestler erected and paid for a two-story frame house 24 ft. x 24 ft., a frame barn 24 ft. x. 40 ft., with an ad-dition 12 ft. x 40 ft., and a frame granary 12 ft. x 12 ft. upon the land received from the United States, and the evidence discloses that all of said buildings were erected upon that portion of lot 3 well within a square 295 feet directly east and 295 feet directly south of the corner; that after the erection of the buildings, Koestler and family lived in the

house, occupied and made use of the buildings as the farm buildings on his farm. The record is silent as to any agreement with Nather as to the erection of these buildings on any portion of the "Northwest corner of the southwest quarter of section eighteen (18)," nor is there anything in the record to indicate Nather ever claimed title to said buildings or any right of dominion over them.

On October 11, 1916, Koestler applied to "The Bankers Farm Mortgage Company" for a loan of $1,800 "to be secured by a first mortgage on SW¼ (otherwise described as E½SW¼ & Lots 3 & 4) quarter of Section 18," etc.; and in his application agreed "to furnish an Abstract showing perfect title to said land free from all encumbrances and liens whatsoever, except the first mortgage to be executed in connection with this loan;" and he alleged that on the land that he owned there was this house, barn, and granary, of the value of $2,300.

On or about October 26, 1916, Koestler and his wife executed a real estate mortgage in comformity with the application, and described the land mortgaged as being "The east half of the southwest quarter and Lots three and four of Section eighteen," etc. In the mortgage he and his wife covenanted "that they are lawfully seized of said premises . . . that they have good right to convey the same . . . that the same are free from all encumbrance whatsoever."

This mortgage was foreclosed by action, Koestler and wife being sole defendants. Judgment was entered on April 8, 1935. On April 9, 1935, a special execution was issued, directing the sale of all of said real estate to satisfy the judgment; and the entire tract was sold on foreclosure sale on June 1, 1935, the certificate of sale being assigned to the plaintiff.

On June 19, 1935, Herman Nather, giving his post office address as "Napoleon in the county of Logan and state of North Dakota," executed and delivered a quitclaim deed to the defendants, purporting to "grant, bargain, sell, release and quitclaim" to them "all of the right, title, interest, claim or demand in and to the following tract or parcel of land . . . to-wit: Two Acres of Land located on the Northwest Corner of the Southwest Quarter of Section 18," etc. This deed was recorded June 20, 1935.

On July 3, 1936, a sheriff's deed was issued to plaintiff, and in

March, 1938, this action was commenced to have the deeds to the two acres of land involved declared null and void, Herman Nather being made a party.

Nather defaulted, and defendants, Clara Nicholson, Adam Koestler, and Edwin Koestler, answer jointly—the other separately—alleging they "are the owners . . . of two (2) acres of land located on the northwest corner of the Southwest Quarter," and ask that the title to these two acres be quieted in them, basing their right upon the quitclaim deed given them by Herman Nather. Nowhere in the answer do they ask to have the two acres delimitated, nor do they make any claim of two acres in any form such as square, oblong, circle, triangle, etc. The defendant, Elizabeth Blackmore, sets forth an additional defense which need not be considered.

Judgment was entered in favor of the plaintiff, canceling these two quitclaim deeds, declaring them to be null and void; and the defendants appeal.

The purpose of a deed is to pass title to the land. Hall v. Solomon, 61 Conn 476, 482, 23 A 876, 877, 29 Am St Rep 218. In order that a deed may be operative, it is essential that the land granted and intended to be conveyed be described with sufficient definiteness and certainty to locate and distinguish it from other lands of the same kind. 16 Am Jur 584, Deeds. See Cox v. Hart, 145 US 376, 389, 36 L ed 741, 746, 12 S Ct 962.

The difficulty involved in this deed is the ascertainment of the land intended to be conveyed. "A deed will not be held void for uncertainty in description, if by the aid of extrinsic evidence it can be made certain and the property located." Brenneman v. Dillon, 296 Ill 140, 129 NE 564. In such case the intention of the grantor is controlling. Ibid. Nolen v. Henry, 190 Ala 540, 67 So 500, Ann Cas 1917B 792.

In construing a deed in order to ascertain the specific property that is conveyed, it is sufficient if the description of the land affords the means of identification. Wheeler Perry Co. v. Mortgage Bond Co. 41 Ariz 247, 17 P(2d) 331; Patterson v. McClenathan, 296 Ill 475, 129 NE 767. Generally it may be said that the test is whether a surveyor with the deed before him and with or without the aid of extrinsic

evidence can locate the land and establish the boundaries. Bogard v. Barhan, 52 Or 121, 96 P 673, 132 Am St Rep 676; 16 Am Jur 586, Deeds.

The courts are bound to put into effect the intention of the parties, if such can be done consistently with rules of law. Frost v. Spaulding, 19 Pick. (Mass) 445, 31 Am Dec 150. The law will construe a deed so as to effect and not to defeat the intention of the parties if this can be done consistently with the rules of law. Nolen v. Henry, 190 Ala 540, 67 So 500, Ann Cas 1917B, 792, supra. The intent of the parties is the intent expressed in the deed, and which existed at the time the deed was executed. 26 CJS 327. For this cause the quantity conveyed is considered, if no other description be given. See Hall v. Shotwell, 66 Cal 379, 381, 5 P 683, 684.

The only expression of any intent on the part of the original grantor Koestler is in the language of the deed itself, whereby he purports to convey two acres on the northwest corner. There is plenty of authority holding that where it is clear the grantor intended to convey a certain definite quantity of land, without describing metes and bounds, but furnishing a starting point from which the land could be surveyed, the tract will be assumed to be in the form of a square, in the absence of proof to the contrary. See Osteen v. Wynn, 131 Ga 209, 62 SE 37, 127 Am St Rep 212; Payton v. McPhaul, 128 Ga 510, 58 SE 50, 11 Ann Cas 163; Green v. Jordan, 83 Ala 220, 224, 3 So 513, 514, 3 Am St Rep 711, 714; Tierney v. Brown, 65 Miss 563, 5 So 104, 7 Am St Rep 679; Walsh v. Ringer, 2 Ohio 327, 15 Am Dec 555; Dolan v. Trelevan, 31 Wis 147; Riha v. Pelnar, 86 Wis 408, 413, 57 NW 51, 53.

An analysis of all of these cases shows the court was attempting to ascertain the intent of the grantor and from the very earliest cases cited, it was taken for granted that where the deed described a quantity of land merely, and gave a starting point, it would be assumed the grantor intended the land conveyed to be in the form of a square. The courts seek to ascertain and give effect to the will of the grantor. It is with this in view that the courts have generally held to this rule when nothing but the quantity to be conveyed is set forth. No statutory reason is given for this assumption; nor are we able to ascertain just

how or when this idea came into being. On account of the antiquity of the rule, we might be persuaded to adopt it as the rule here, provided that there was nothing in the record to throw doubt upon this as being the intent of the grantor. We could even go farther and hold that such absence of such intent must be shown by convincing evidence. The rule is a rule of convenience, and in the absence of anything to the contrary, we might be persuaded to adopt it as the rule here.

As said before, it is not clear just what was the foundation for the rule of square, but, in any event, it is a presumption as to the intent; and, like every other presumption that is not conclusive, it may be dispelled by other acts of the parties, particularly the grantor, to show that it was incompatible with the actions of the parties. In that case, where the presumption is destroyed, and there is no evidence furnished of any intent, and nothing upon which to base an intent, the description is so indefinite as to render the deed valueless.

The facts in the case are numerous and persuasive that it was not the intent of the grantor to grant the two acres claimed; that it was not the contract entered into between the grantor and the grantee. The undisputed facts of the case are strongly against such an assumption. If the law of the land stated in effect that where a quantity of land was conveyed, beginning at a certain point, the portion conveyed would be deemed to be in the form of a square—no other form being suggested—we would have a different situation.

In the case at bar, we are required to consider whether this established rule is to be applied here that in the absence of metes and bounds, the mere description of land by quantity means the land takes the form of a square. The clear implications are against any such construction. The deed to Nather was executed in 1907. The record shows that Koestler and his family occupied all of the land rather inaccurately defined as the southwest quarter. This was his farm home. He remained in possession of all of the land, including the two acres attempted to be conveyed. He erected his farm buildings on the tract which would be conveyed if it were to be taken in the form of a square. The record shows he paid for these buildings, and there is an absence of any indication that he ever consulted Nather about it. He repre-

sented it as his own, mortgaged it as his own. Nather was his wife's brother, and no protest on his part is even intimated.

No reason is given why .Nather was not called as a witness on the part of those who are asserting the validity of the deeds. This in itself would be a strong factor in determining that Nather did not claim nor intend to convey that particular square to defendants, nor claim this square as the land conveyed to him by Koestler. Not only this, but nine years after Koestler's deed to Nather, when the former applied for a loan, he included those buildings and the tract upon which they were situated, in the land which he claimed to own, and which he mort-gaged as his own. We cannot assume that Koestler, in making this sworn application for a loan, and in executing the mortgage and claim-ing that he held title to the land, intended to defraud the mortgagee. He knew, or would be presumed to know, that the deed to the two acres was on record; and it must be considered, therefore, that when he put the buildings on this portion of the farm, he did not consider that these were located on the two acres which he had conveyed. This being so, it disposes entirely of the theory that the two acres "on the Northwest corner" was to be considered in the form of a square, and that such was the intent of the grantor and the grantee.

Another exceedingly significant factor in the case is there is nothing whatever to show that Nather ever claimed that the land was in the form of a square, or that the portion of the land upon which the buildings are situated was part of the land which he claimed under his quitclaim deed. He was a party to this action, and defaulted. He made no at-tempt to defend his deed as conveying "two acres" in the form of a square.

The record shows that the land was sold on foreclosure on June 1, 1935, and it was not until June 19, 1935, Nather quitclaimed to the defendants. Just why the defendants bought this land from Nather for "One Dollar and other valuable considerations," does not appear, unless one would gather that they attempted to claim the buildings upon the land. They are the children of the mortgagor. It is signifi-cant that in their answer, while claiming two acres out of the tract, they nowhere state that the two acres are in the form of a square, nor do

they at any time attempt to prove or offer to prove the intent of their father in his deed to Nather.

Assuming that under proper circumstances we would hold that a tract of land attempted to be conveyed as these quitclaim deeds indicate, would be considered to be granted in the form of a square—in the absence of any other proven intent of the parties—it is clear that we cannot uphold this doctrine here. It certainly would be inequitable to do so. Certainly Koestler would not build his home on land he knew he had deeded to his brother-in-law. No rule being suggested or presented to support a square, other than the rule of presumed intent, we find, as did the trial court, that the description in the deed is so indefinite as to render the deed to Nather nugatory. The defendants have no better right than did Nather, and, therefore, the judgment of the lower court is affirmed. This affirmance is without prejudice to any rights the grantees in either deed may have against their respective grantors.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.