| | | |
|---|---|---|
| HERMAN R. GUERRERO, | ) | CIVIL ACTION NO. 82-108 |
|     Plaintiff, | ) | |
| vs. | ) | |
| JUAN Q.NORITA, et al., | ) | |
|     Defendants. | ) | MEMORANDUM OPINION |
| and | ) | |
| JUAN Q. NORITA, | ) | |
|     Third-Party Plaintiff, | ) | |
| vs. | ) | |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS LAND COMMISSION, | ) | |
|     Third-Party Defendant. | ) | |

At issue in this matter is the ownership of a 20,000 square meter parcel within an area known as Agricultural Homestead No. 329. A brief history and reference to several documents is necessary for the resolution of this matter.

## BACKGROUND

Some time prior to February, 1968, Antonio T. Rogolofoi (Rogolofoi) applied for and received a homestead permit for a 46,207 square meter parcel in the Capitol Hill area on Saipan. The homestead is known as A.H. 329.

On February 13, 1968, Rogolofoi executed a "Deed of Sale" to defendant Juan Q. Norita (Norita) which document is in evidence as Plaintiff's Exhibit 2. The deed purported to convey 20,000 square meters of A.H. 329 to the grantee. On June 30, 1969 the government quitclaimed the property known as A.H. 329 to Antonio T. Rogolofoi after he had complied with the homestead requirements.

On December 23, 1970 Norita executed a "Deed of Sale" transferring 9,000 square meters of the 20,000 square meters to defendant Masuo Kyota (Kyota).

On December 28, 1970 Norita executed a "Deed of Sale" transferring 4,000 square meters of the 20,000 square meters to defendants Martha E. and Eusebio Rechucher (Rechucher).

On January 8, 1971 Norita executed a "Deed of Sale" transferring to defendant Rosemary Kendall (Kendall) 40,000 square feet of the 20,000 square meter parcel.

These three deeds are in evidence as Plaintiff's Exhibits 3, 4, and 5, respectively.

From around 1968 to the present, the plaintiff, his brother, Pedro Guerrero, and their families have fenced, used or farmed A.H. 329 and none of the defendants have possessed, farmed or used the property.

931

Antonio T. Rogolofoi died approximately in 1970 and was survived by Carmen Rogolofoi, his spouse. On January 7, 1981 a Determination of Ownership was issued by the Land Commission finding title in A.H. 329 to be in Herman R. Guerrero subject to the Norita, Rechucher, Kyota and Kendall deeds. Said Determination of Ownership is Plaintiff's Exhibit 1.

This suit was filed in 1982 by plaintiff and essentially asks that the court rule that the Rogolofoi to Norita deed is void for several reasons set forth in paragraph 7 of the complaint. Should this deed be void then all subsequent conveyances of Norita would be ineffective.

## DISCUSSION

The plaintiff has advanced five grounds for declaring the February, 1968 deed of Rogolofoi to Norita void:

a. There is no particular description of the land conveyed to defendant Norita;

b. The purported transfer took place prior to the time that Antonio T. Rogolofoi received title to the agricultural homestead;

c. That Carmen T. Rogolofoi possessed at least an undivided one half interest in said homestead and did not transfer said interest other than to plaintiff herein;

d. That no consideration passed for said transfer from defendant Norita to Antonio T. Rogolofoi.

e. That at the time of the purported transfer, Antonio T. Rogolofoi was so intoxicated with alcoholic beverages that he did not know what he was transferring to defendant Norita.

For purposes of discussion, these grounds will be taken in reverse order.

FIRST, the court rules there is no basis upon which to find that Rogolofoi was so intoxicated on February 13, 1968 that he did not know what he was transferring. There is evidence he was an alcoholic but in so far as his actions in signing the February 13, 1968 deed, the evidence is that he was competent to execute the deed.

SECOND, the evidence is clear that Norita paid $600 to Rogolofoi as and for the consideration for the deed and there was no failure to pay the amount specified in the deed.

THIRD, even if Carmen Rogolofoi possessed an undivided one-half interest, Rogolofoi could transfer his one-half interest. Since the 20,000 square meters is less than one half of the entire parcel, there was no impediment to the purported transfer. There is no evidence to support the finding that Rogolofoi was prohibited from transferring his one-half interest - if that is what he had. Of course, if he owned the property outright as his own homestead, no difficulty pertains to the transfer. Thus, this assertion does not provide plaintiff a basis for relief.

FOURTH, plaintiff's claim that the Rogolofoi to Norita deed is void because it preceded the quitclaim deed from the

933

government has already been ruled upon by the court. Both the doctrine of after acquired title and the case of <u>Sablan v Norita</u>, 7 TTR 90 (High Court Tr. Div. 1974) disposes of this allegation.

Finally, the court turns to the description of the land in the Rogolofoi to Norita deed. Since the court finds the deed itself is determinative in this matter a copy is attached hereto as Appendix "A". In conjunction with the deed, Plaintiff's Exhibit 6 and Defendant's Exhibit A must be considered.

At the outset the court acknowledges several basic rules to be used in approaching the question of whether the description of the property in the deed is too uncertain or vague to allow the deed to stand and convey an interest in property. As a general rule, it can be stated that the courts are liberal in construing a description in a deed so that if there is a way to sufficiently determine and identify the land, the instrument will be operative as a conveyance. 23 AmJur 2d, <u>Deeds</u>, §222 p.265 et seq. This attitude of liberality has progressed from prior times when more exactitude was demanded by the courts. Consequently, the instances of courts entertaining and using extrinsic evidence to "fill the gap," so to speak, have increased in scope. See generally, 23 AmJur 2d, <u>Deeds</u>, §249, p.285 et seq.

In following these general rules at trial in this matter, the court permitted the defendant Norita to introduce oral and written (Defendant's Exhibit A) evidence to explain the terms of the deed.

After reviewing the testimony, exhibits, and in particular Plaintiff's Exhibit 2, and after viewing the property, the court concludes that, try as it might, it cannot clarify or determine the intent of Rogolofoi, the grantor, as to what 20,000 square meter parcel was to be transferred to Norita.

From reading the deed itself, it is impossible to determine the location of the parcel to be transferred. The only definitive description in the deed is that of A.H. 329. It is known that it contained 46,207 square meters and that Norita was to get 20,000 square meters. But which part? The only possible clue in the deed is found at two places. In the first paragraph it states that it is "... a part or portion of parcel of land ..., situated adjacent to the road leading up to Uailes (Wireless) at Donni (Army Hill) in Saipan, Mariana Islands.....".

In the last full paragraph, it is stated that the 20,000 square meters will be "... from the above described premises situated adjacent to the road."

In both instances it is difficult to determine if the grantor is saying that all of A.H. 329 is adjacent to the road or whether the parcel deeded to Norita is to be adjacent to the road. However, for the purposes of the resolution of this matter, it will be presumed that Rogolofoi intended to give Norita land adjacent to the road.

Even with this presumption, the court is confronted with other questions such as: Is the grantee to receive all frontage on the road? If any point is selected as the starting point, on what course is the boundary line drawn?

The view of the property by the court as well as an examination of Plaintiff's Exhibit 6 reveals that A.H. 329 is not a square, rectangle, or easily described parcel. Only two sides of the parcel are straight. Except for the road that abuts the south-east corner, there are no readily ascertainable features on the surface to call out a metes and bounds description. The property is sloping agricultural land, covered mostly by tangan tangan. It is a relatively large parcel which cannot be seen by the naked eye all at one time due to its size and topography.

In order to attempt to identify the land by extrinsic evidence the defendant, Norita, testified that he and Rogolofoi used Defendant's Exhibit A to plot out the location of the property. His initial testimony was that the road referred to in the deed ran adjacent to parcel "A" on Defendant's Exhibit A and that he was to get "A". This was admittedly in error after reviewing Plaintiff's Exhibit 6 and Norita subsequently indicated he was to acquire the northerly part of A.H. 329. The confusion as to which parcel was intended to be transferred increased with the testimony of the defendant's wife who stated the defendant was to get the "middle" part. Even the defendant testified that Rogolofoi told him that he, Rogolofoi, would choose the land and it would be by or near the road. This conversation purportedly took place on the property.

Succinctly stated, the extrinsic testimony added to the confusion and the difficulty of identifying the parcel. Additionally, the plaintiff countered with testimony that the road referred to in the deed and the area (Donni) are misnomers.

936

There is no doubt that the deed from Rogolofoi to Norita left the determination and selection of the parcel up to Rogolofoi. The testimony of Norita supports this.

Of significance is the fact that neither Norita nor any of his grantees ever assumed possession of any portion of the land and this possible way of identifying the land is non-existent.

Even the term "adjacent" as used in Plaintiff's Exhibit 2 is of doubtful assistance. The term "adjacent" is not synonymous with "abutting". It may imply contiguity, but the term is more often a relative one depending for its meaning on the circumstances of the case. U.S. v St. Anthony R. Co., 192 U.S. 525, 24 S.Ct. 333.

The term "adjacent" does not necessarily mean contiguous but "near to" or "close by". Vol. 2, Words and Phrases.

The word "adjacent" as used in a statute respecting appropriation of a county's share of a forest reserve school funds to school districts adjacent to national forests does not mean "contiguous" or "touching" or "adjoining", but rather "neighboring" or "near to" or "close by".

Sonora Elem. Sch. Dist. v Tuolumne County Bd. of Ed., 49 Cal Rptr. 153, @156, 239 CA·2d 824 (1966)

Adjacent land has been held to be up to 8 to 10 miles from a highway.

Sou. Idaho Conf. Ass'n v. U.S., 41 F.2d 411 (9th Cir. 1969).

The definition of "near to" or "close by" would be consistent with the conversation of Rogolofoi with Norita while

on the land. In such event, there then is not even the starting point at the road but the starting point could be at or near the road.

The defendant has cited one case, Tierney v Brown, 65 Miss. 563 (1888) to support his position. In Tierney the description was the south part of a section - 225 acres. The court held it as "easy enough to lay off 225 acres of the south part of section 5 ....." The Tierney case is not this case. If the Rogolofoi deed specified Norita was to get the north 20,000 square meters of A.H. 329 and A.H. 329 was a square or even a rectangle, Tierney would be of some help to the defendant. But such is not the case.

Cases closer in point are Mitchell v Nicolson (1942) 71 ND__, 3 NW 2d 83, 139 ALR 1175 and Corona Unified School Dist. of Riverside Co. v Vejar, 332 P. 294 (Cal 1959). In Mitchell the deed purported to convey two acres of land located on the northeast corner of the southwest quarter of a section. Though the court recognized the rule of square[1] it held the deed was valueless. In Mitchell as here, there is no starting point designated for a survey, and the grantee did not possess or use the property claimed. Also, in Mitchell as here, it is significant that in the grantee's answer, while claiming a certain smaller area out of a larger tract, the grantee nowhere states

---

[1]The rule of square provided that when the grantor intended to convey a certain definite quantity of land, without describing metes and bounds, but furnishing a starting point from which the land could be surveyed, the tract will be assumed to be in the form of a square, in the absence of proof to the contrary.

where the area purportedly conveyed is located, nor has the grantee at anytime during the trial designated or delineated the boundaries of the 20,000 square meter parcel.

In _Corona_ the purported conveyance was 12 acres in the southwest part of Lot 2 of a tract adjoining a certain subdivision. Even though the grantee staked out the 12 acres with the oral consent of the grantor, the court held the description was not sufficient and stated:

> "Try as we will, there is no way that
> the description of the "twelve acres
> ... southwest part of Lot 2 ...
> adjoining Colonite subdivision" can
> be actually delineated on the ground
> without orally supplying missing
> elements of the description ...
> There is no way from the description
> to assign to it any width or depth."

What, in effect, the defendant requests is that the court be the surveyor and set a course and direction of a boundary line so somehow it comes up with a 20,000 square meter tract. This is not within the province nor the authority of the court because the court would be substituting its judgment for the intent of the grantor - an intent which was not adequately expressed in the 1968 deed and not clarified by any extrinsic evidence offered by the defendant. Indeed, as stated above, the extrinsic evidence, both oral and written, only compounds the confusion as to the location of the 20,000 square meter parcel.

It is clear in reading the 1968 deed, Rogolofoi and Norita intended that the latter was to get a particular 20,000 square

meter parcel. No claims has been asserted by the defendant, (and rightfully so) that it was intended that Norita was to obtain an undivided interest. The last full paragraph of the deed makes it clear that a description of the particular parcel, at the designation of the grantor, would be forthcoming. This leads the court to the unalterable conclusion that the "Deed of Sale" of February, 1968 was ineffective as a legal conveyance. 117 ALR 1073 et seq.

With this conclusion, the other issues raised by the defendants including the validity of the 1981 Determination of Ownership and statute of limitations/frauds need not be extensively discussed.

The court finds that the 1981 Determination of Ownership gives plaintiff standing and certainly gives plaintiff an indicia of ownership. The court will not speculate as to the proceedings leading up to the issuance of the Determination of Ownership. During the trial the court granted the government's motion for a dismissal of defendant Norita's third-party complaint against it. The court also finds that neither the statute of limitations nor the statute of frauds has a bearing on the court's conclusions about the 1968 deed. If a deed is of no legal effect ab initio, because of a failure to describe the land, it can be so declared regardless of the statute of limitations and as indicated at argument the statute of frauds is not applicable to this case.

No costs are awarded the plaintiff for the reason that the defendant Norita is out of pocket $600 previously advanced to Rogolofoi and it would be inequitable to further put him out of pocket for costs. Should a probate proceeding be initiated for Antonio T. Rogolofoi, it is speculative that any recovery would be forthcoming particularly in light of exemptions allowed in the new Probate Code.

This memorandum opinion shall constitute the findings of fact and conclusions of law pursuant to Com.R.Civ.P. 52(a).

Dated at Saipan, CM, this <u>1st</u> day of March, 1984.

_____
Robert A. Hefner, Chief Judge