# COOKE *v.* AVERY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 72. Submitted December 5, 1892. — Decided January 23, 1893.

In view of the requirements of Rev. Stat. § 953, respecting the authentication of bills of exceptions, it will be assumed, where a bill is certified by a District Judge holding Circuit Court, that the Circuit Justice and Circuit Judge were not present at the trial, unless the record clearly and affirmatively shows the contrary.

When it appears that some title, right, privilege or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, the case is 'one arising under the Constitution or laws of the United States.

When a party, on the first trial of a cause in a Circuit Court, sets up such a right as the ground of Federal jurisdiction, and the jurisdiction is sustained, he cannot be permitted, on the second trial, to oust the jurisdiction by contending that no such right is in controversy.

Where a plaintiff's title rests upon the validity of a lien claimed to have been acquired under a judgment of a Circuit Court of the United States, the disposition of the issue depends upon the laws of the United States and the rules of its courts, and a Federal court has jurisdiction.

An index to an abstract of judgments in Texas, made under its laws for acquiring judgment liens, is sufficient, which gives the defendants' name or names correctly, and the names of the plaintiffs by a partnership title.

In Texas, in trespass to try title, the defendant cannot question the validity

of his grantor's title at the time of the conveyance to him when the plaintiff claims under the same grantor, unless he claims under a paramount title.

If the defendant in such an action pleads his title specially, he waives the general issue, and is confined to the defence specially pleaded.

The defendant in such an action, not having been in possession of the land in dispute for twelve months next before the commencement of the action under written evidence of title, offered to show that immediately after concluding his bargain for the property he entered into possession, and commenced making improvements, and erected improvements of great value on the property before he knew of the plaintiff's lien. This was done in order to enable him to get the benefit of the provisions in the Texas statutes relating to improvements. *Held*, that the offer was too vague.

A married woman was codefendant in an action of trespass to try title in Texas. Her interest was a community interest in the property by virtue of a conveyance to her husband. *Held*, that a personal judgment in damages for use and occupation, and for costs, could not be rendered against her.

THIS was an action of trespass to try title to a tract of land in Hunt County, Texas, brought by W. W. Avery, December 24, 1886, against J. H. Cooke; his wife, M. E. Cooke; and the Scottish-American Mortgage Company; in the Circuit Court of the United States for the Northern District of Texas, the plaintiff alleging that he was a citizen of the State of North Carolina; that the defendants Cooke were citizens of the State of Texas; and that the Mortgage Company was an alien corporation and a subject of Great Britain.

The petition averred that, on the 25th of November, 1886, plaintiff was lawfully seized and entitled to the possession of the land in question, located in Hunt County, Texas, in the Northern District of said State, and entitled to hold the same in fee simple, and that defendants Cooke unlawfully dispossessed him thereof, and still unlawfully withhold the same.

The Mortgage Company demurred, and also pleaded that on January 1, 1886, the defendants Cooke, who were at that time in possession of the land, and seized of good title in fee simple, and had the right to convey the same, executed a deed of trust thereon to one Simpson, as trustee, to secure a loan of money made by the company to the Cookes. The other defendants answered to the merits, and subsequently, on Feb-

ruary 13, 1888, defendant J. H. Cooke withdrew his answer, and filed a plea to the jurisdiction of the court, to the effect that the land had been conveyed to plaintiff by citizens of Texas on November 25, 1886, without consideration and for the purpose of conferring jurisdiction; and on the same day, not waiving his plea to the jurisdiction, he answered, (1) not guilty; (2) that he purchased the land in controversy from J. H. Payne, under whom the plaintiff claimed, "in actual ignorance of any lien upon said land, and in the belief that said tract of land was the homestead of said J. H. Payne, and that no creditor of said Payne could acquire a judgment lien thereon. That this defendant for more than twelve months before the commencement of this suit had actual adverse possession of said land in controversy, and that during said period defendant made upon said land permanent and valuable improvements in good faith, as follows: [The alleged improvements were enumerated, and the total value stated to be $11,900.] That said tract of land without said improvements is of the value of $2000, and by said improvements the same is enhanced in value by the cost or value aforesaid of said improvements. Defendant prays for the value of said improvements if plaintiff recovers said land," etc.

On February 11, 1889, plaintiff filed his amended original petition, which further alleged that plaintiff and the defendants derived title from one J. H. Payne as a common source; that the defendants deraigned title through a certain deed executed by Payne and his wife, January 2, 1886; while the plaintiff claimed title under an execution sale upon a judgment recovered against Payne, January 17, 1882, in case No. 198, in the Circuit Court of the United States for the Northern District of Texas, at Dallas, in favor of John Deere, Charles H. Deere, Stephen H. Velie, Alvah Mansur and L. H. Tibbetts, partners under the firm name of Deere, Mansur & Company, for the sum of $717.93 and costs of suit, all the proceedings upon and in reference to which were fully set forth. Plaintiff further alleged that by reason of certain laws of the United States and rules of the Circuit Court of the United States for the Northern District of Texas, which were specifically referred

to, the judgment was a lien upon the property from the date of its rendition, or became such on the date the abstract thereof was recorded and indexed in Hunt County, February 9, 1882, (as set out,) and continued to be a lien up to the date of the sale by the marshal, by reason whereof plaintiff had a superior title to the property; but that defendants denied that the judgment was ever a valid lien on the property under said laws and rules; and this constituted the controlling question in the case, upon the correct decision of which plaintiff's title depended. Plaintiff therefore averred that this suit arose under the laws of the United States and the rules of the Circuit Court, and that the Circuit Court at the institution of the suit had and still had jurisdiction thereof without regard to the citizenship of the parties thereto.

On June 8, 1889, the defendants Cooke demurred to that part of the amended original petition treating of jurisdiction, and further pleaded "that if they are not the owners of the land in controversy the title thereto is outstanding in one Y. D. Harrington, to whom it was conveyed by said J. H. Payne before the lien under which plaintiff claims attached, and defendants deny all the averments of said petition."

On the same day plaintiff demurred and excepted generally and specially to defendants' plea to the jurisdiction, and denied its allegations, and also replied to defendant J. H. Cooke's original answer by general and special demurrers or exceptions, and a general denial.

The cause came on for trial June 8, 1889, and the court having heard and disposed of the several demurrers and exceptions, the trial was proceeded with.

The plaintiff introduced in evidence a judgment of the Circuit Court rendered January 17, 1882, in favor of John Deere, Charles H. Deere, Stephen H. Velie, Alvah Mansur and L. H. Tibbetts, against J. H. Payne, in cause No. 198, for the sum of $717.93, of which the sum of $682.13 was directed to draw interest at the rate of ten per cent per annum, and the sum of $35.80 at the rate of eight per cent per annum, and for costs; and also a general index of all

judgments rendered in the court, which showed under the proper letter that the judgment in favor of Deere, Mansur & Co. against J. H. Payne was entered in minute book No. 1, page 534; also, an execution issued on the judgment, March 3, 1882, returned "no property found;" and an execution issued August 11, 1886, under which the land in controversy was levied on by the marshal, August 12, and sold by him, September 7, 1886, to Charles C. Cobb and John M. Avery; also the marshal's deed to said Cobb and Avery, made pursuant to the levy and sale, and dated September 7, 1886. Plaintiff also introduced the papers in case No. 198, including the original petition, which petition was endorsed: "In Circuit Court of United States, No. 198, Deere, Mansur & Company *v.* J. H. Payne," which endorsement was also on all the other papers in the cause; and the citation, which was duly served on Payne, notifying him to answer the suit in case "No. 198, of Deere, Mansur & Company, a firm composed of John Deere, Charles H. Deere, Stephen H. Velie, Alvah Mansur and L. H. Tibbetts, against J. H. Payne, defendant." The petition showed that the suit was brought on a promissory note, which was attached as an exhibit, and was dated April 16, 1880, executed by J. H. Payne, and payable to the order of Deere, Mansur & Co. Plaintiff further offered in evidence a certified copy of an abstract of the judgment in case No. 198, and a certified copy of the index of the abstract from the records of Hunt County. The certificate of the clerk of the county court of that county stated that said certified copies were true copies of the abstract recorded in the judgment record book No. 1, page 47, of Hunt County, and of the index, both direct and reverse, referring to said page 47, of said judgment record book, as appeared from the index in his office. The certified copy of the abstract was as follows:

"Circuit Court of the United States, for the Northern District of Texas, at Dallas.

"I, A. J. Houston, clerk of the Circuit Court of the United States for the Northern District of Texas, at Dallas, do hereby

certify that in said court, on Tuesday, January 17th, 1882, the plaintiffs recovered a judgment against the defendant for the sum of $717.93, of which the sum of $682.13 shall draw interest from said date at ten per cent per annum and the balance, $35.80, shall draw interest at eight per cent per annum, together with the costs by plaintiffs incurred; all of which said judgment and costs is yet due and unpaid by the defendant in case No. 198, and styled Deere, Mansur & Company, plaintiffs v. J. H. Payne, defendant; all of which appears from the records of said court now in my office.

"In testimony whereof I hereunto set my hand and affix the seal of said court, at Dallas, Texas, this 6th day of February, A.D. 1882, and of the Independence of the United States the 106th year.

[Seal of U. S. Circuit Court at Dallas, Tex.]

"A. J. HOUSTON,

"Clerk of said Court.

"Filed for record Feb'y 9th, 1882, at 10 o'clock A.M. Recorded same day and hour. A. CAMERON,

"Co. Clerk, Hunt Co., Texas."

The certified copy of the direct and reverse index was as follows:

"Direct Index to Judgment Record, Hunt County, Texas.

"Plaintiffs' name: Deere, Mansur & Co.
Defendant's name: J. H. Payne.
Page of judgment record: 47.

"Reverse Index to Judgment Record, Hunt County, Texas.

"Defendant's name: J. H. Payne.
Plaintiffs' name: Deere, Mansur & Co.
Page of judgment record: 47."

The defendants objected to the introduction of the abstract because it did not correctly give the names of the plaintiffs in the judgment, and did not show the amount still due thereon,

as required by law; and to the index because it did not give plaintiffs' names; but the objection was overruled, and the abstract and index admitted, and defendants Cooke excepted.

Plaintiff then introduced a deed from Cobb and Avery to plaintiff dated November 25, 1886, and also "for the purpose of proving a common source of title and for no other purpose," a certified copy of the deed from Payne and wife to defendant J. H. Cooke, dated January 2, 1886. It further appeared that the Mortgage Company claimed under a deed of trust of the same date, executed by Payne and wife to Simpson, as trustee, to secure a loan of money, and that Payne derived title through a deed from Crabtree and wife to him, dated August 16, 1867, and duly acknowledged and recorded in April, 1868.

Two rules of the Circuit Court for the Northern District of Texas were then put in, to wit, Rule No. 1, adopted by that court at Dallas, April 2, 1880, as follows, viz.: "Rule 1. The modes of proceedings prescribed by the laws of Texas, when they do not conflict with the laws of the United States or a rule of the Supreme Court of the United States or of this court, are adopted."

And also Rule No. 1, adopted by the court at Dallas, July 26, 1881, which is as follows, viz.: "Rule 1. All laws and rules of procedure and practice prescribed by the legislature of the State of Texas as they now exist or as they may be changed and amended from time to time, when the same do not conflict with the law of the United States or a rule of the Supreme Court of the United States or of this court, are hereby adopted as the rule of practice in this court, and all suits by attachments, sequestration or otherwise brought in this court shall conform to the laws of the State of Texas in force at the time such suit is brought, provided the same does not conflict with a law of the United States or a rule of the Supreme Court of the United States or of this court."

It was agreed that Y. D. Harrington, assignee, fully administered the trust created by Payne's deed of assignment, hereinafter mentioned, prior to July 1, 1881, and made final report of his proceedings thereunder to the proper court and was discharged by said court prior to July 1, 1881, and ever since

that date had ceased to act as such trustee. It was also agreed that ever since the date of the assignment Payne and Cooke, claiming under Payne, had consecutively held peaceable and adverse possession of the land in controversy in this suit, cultivating, using or enjoying the same, and paying taxes thereon, and claiming under a deed or deeds duly registered, the deed to Payne antedating the deed of assignment, and that to Cooke, in evidence. It was further agreed that the assignee, Y. D. Harrington, never made any claim of title to the land by virtue of the deed of assignment or otherwise.

Plaintiff having closed, defendants Cooke moved that the cause be dismissed for want of jurisdiction. It was admitted that jurisdiction could not be maintained on the ground of the citizenship of the parties, and that, upon a former trial of the cause, defendants' counsel contended that, by a proper construction of section 916 of the Revised Statutes and the rules of the Circuit Court, the laws of Texas as they existed in 1873 governed the lien of the judgment, and that the lien was invalid thereunder because executions had not been issued on such judgment each year since its rendition, and that this was defendants' only contention on that trial in regard to the invalidity of said lien, while it was, on the other hand, insisted by plaintiff that the judgment lien was governed by the statute of Texas of 1879, under section 916 and the rules. The motion to dismiss was overruled, and the defendants Cooke excepted.

Thereupon defendants Cooke offered in evidence a general deed of assignment, under the law of Texas in that behalf, for the benefit of his creditors, from Payne to Harrington, dated October 16, 1880, which purported to convey to Harrington, for the benefit of such of Payne's creditors only as would accept its provisions, all Payne's property, real and personal, not exempt, but did not mention the land in controversy specifically, either in its body or in the inventory and exhibits attached. It provided for the disposition of the assigned property and the rendition of the surplus to Payne after paying the expenses and the creditors in full. The admission

of this assignment was objected to by plaintiff, the objection sustained, and defendants excepted.

Defendants Cooke offered in evidence the original deed made by Payne and wife to Cooke, dated January 2, 1886, which was objected to on the ground that defendants, having specially pleaded an outstanding title as a defence, could not prove title in themselves, which objection was sustained by the court, the deed excluded, and defendants excepted. Defendants then offered the original deed from Payne to Cooke, under the plea that they had placed valuable and permanent improvements on the land, and had had adverse possession for more than twelve months before the commencement of the suit, and in that connection offered to prove that in October, 1885, defendant J. H. Cooke had by parol agreed with Payne upon terms of purchase, but no consideration was paid Payne until the date of the deed; and that immediately upon making the agreement, Payne delivered to Cooke exclusive possession of the premises, and Cooke entered upon such possession, holding adversely and in good faith, and commenced the erection of improvements thereon, which enhanced the value of the land in controversy. The evidence was excluded and exception taken.

Defendants Cooke then offered to prove that from January 1, 1882, until the sale by him, Payne was the head of a family consisting of wife and children, and that the land was claimed and used by him as his homestead. The court sustained objection thereto, and defendants excepted.

Upon the conclusion of the evidence, the court instructed the jury to return a verdict for the plaintiff for the land and for the value of the rents and profits thereof from November 25, 1886, to the date of the trial, to which instruction defendants excepted. Thereupon a verdict for plaintiff was returned, with damages, and judgment entered by the court for the recovery from the defendants of the title and possession of the premises in question, together with the fixtures and permanent improvements thereon and appurtenant thereto, and that plaintiff have a writ of possession; and it was further adjudged that plaintiff recover of defendants

Cooke the sum found by the jury as damages, together with costs.

The Mortgage Company declining to join in the prosecution of the writ of error, an order of severance was entered, and this writ of error brought accordingly.

*Mr. M. L. Crawford* for plaintiffs in error.

*Mr. John M. Avery* for defendant in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The placita shows that the Circuit Court met at Dallas, in the Northern District of Texas, on May 20, 1889, the United States District Judge presiding, but that when the court assembled on June 8, 1889, pursuant to adjournment, the Circuit Justice, the Circuit Judge, and the District Judge were all present. The bill of exceptions is signed by the District Judge, and as it does not appear that the other judges were present at the trial, which ensued after the meeting of the court, we assume that it was had before the District Judge alone.

Section 953 of the Revised Statutes provides for the authentication of bills of exception by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat on the trial of the cause; and, therefore, if this trial had taken place before the Circuit Justice and one of the other judges, or before the Circuit and District Judges, the bill of exceptions would, of course, have been signed by the Circuit Justice or Circuit Judge, as the case might be. The motion to strike out the bill of exceptions upon the ground that it must be held that the judges who were present at the opening of the court were present on the trial, is therefore overruled.

Whether a suit is one that arises under the Constitution or laws of the United States is determined by the questions involved. If from them it appears that some title, right, privilege

or immunity on which the recovery depends will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, then the case is one arising under the Constitution or laws of the United States. *Osborn* v. *Bank of the United States,* 9 Wheat. 738; *Starin* v. *New York,* 115 U. S. 248, 257. In *Carson* v. *Dunham,* 121 U. S. 421, it was ruled that it was necessary that the construction either of the Constitution or some law or treaty should be directly involved in order to give jurisdiction, although for the purpose of the review of the judgments of state courts under section 709 of the Revised Statutes, it would be enough if the right in question came from a commission held or authority exercised under the United States.

Section 916 of the Revised Statutes is as follows: "The party recovering a judgment in any common law cause in any Circuit or District Court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereinafter enacted which may be adopted by general rules of such Circuit or District Court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

This section was taken from the act of Congress of June 1, 1872, entitled "An act to further the administration of justice," (17 Stat. 196, c. 255,) and was reënacted in the Revised Statutes, which took effect as of December 1, 1873. The remedies upon judgments under the section are such remedies as were provided by the laws of the State in force when it was passed or reënacted, or by subsequent laws of the State adopted by the courts of the United States in the manner provided for under that section. *Lamaster* v. *Keeler,* 123 U. S. 376.

On the former trial of this case the defendant contended that, under a proper construction of section 916 and the rules of the Circuit Court, the laws of Texas in force in 1873 gov-

erned the judgment lien under which plaintiff claimed title, and that by those laws the lien was lost because execution had not been issued each year prior to the issue of that on which the land was sold ; while plaintiff contended that the statutes of Texas enacted in 1879 governed the lien, and under them the lien was not lost by failure to issue the execution each year.

It is now insisted by defendants that the latter is the true view, and hence it is said that there is no real and substantial controversy arising under the laws of the United States. Clearly, the right of a plaintiff to sue cannot depend upon the defence which a defendant may choose to set up, and as on the first trial defendants relied on the decision of a Federal question to defeat the action, such a concession of the existence of a Federal ingredient in the cause might fairly be held to bind them when they subsequently abandon it, and seek to oust the jurisdiction upon the ground that there could be no real dispute as to the applicable law.

By section 34 of the Judiciary Act of September 24, 1789, c. 20, (1 Stat. 92,) carried forward into section 721 of the Revised Statutes, it was provided that the laws of the several States except where the Constitution, treaties or laws of the United States might otherwise require or provide, should be regarded as rules of decision in trials at common law in the courts of the United States in cases where they applied.

Section 2 of the act of September 29, 1789, (1 Stat. 93,) provided that the forms of writs and executions and modes of process in the Circuit and District Courts in suits at common law should be the same in each State, respectively, as in the Supreme Courts of the same; and by the act of May 8, 1792, (1 Stat. 275, c. 36,) these forms and modes of proceeding as then in use in the courts of the United States, under the act of 1789, were permanently continued ; but it was declared that they were subject to such alterations and additions as the said courts should, respectively, in their discretion, deem expedient, or to such regulations as the Supreme Court of the United States should from time to time think proper by rule to prescribe to any Circuit or District Court concerning the same. This delegation of power has been repeatedly held to be per-

fectly constitutional, and that the power to alter and add to the process or modes or proceeding in a suit, embraced the whole progress of such suit, and every transaction in it from its commencement to its termination, and until the judgment should be satisfied. *Wayman* v. *Southard*, 10 Wheat. 1; *Beers* v. *Haughton*, 9 Pet. 329, 359. The process act of May 19, 1828, (4 Stat. 278, c. 68; Rev. Stat. § 913,) made similar provision and declared that it should be in the power of the courts so far to alter final process therein as to conform the same to any change made by the state legislatures for the state courts.

By section 967, taken from the fourth section of the act of July 4, 1840, (5 Stat. 392, 393, c. 43,) the judgments and decrees rendered in a Circuit or District Court within any State cease to be liens on real estate in the same manner and at like periods as the judgments and decrees of the courts of such State cease by law to be liens thereon.

Under this legislation, judgments recovered in the Federal courts were undoubtedly liens in all cases where they were such by the laws of the States. *Baker* v. *Morton*, 12 Wall. 150, 158; *Ward* v. *Chamberlain*, 2 Black, 430; *Massingill* v. *Downs*, 7 How. 760. But no right in the States to regulate the operation of Federal judgments was thereby recognized, and the lien of such judgments depended upon the acts of Congress and the rules of the Federal courts. There was no law of Congress, however, prior to August 1, 1888, which expressly gave a lien to the judgments of the courts of the United States or regulated the same, but on that day an act was approved, which made such judgments liens on property throughout the State in which the Federal courts sat, in the same manner and to the same extent and under the same conditions only as if rendered by the state courts. 25 Stat. 357, c. 729.

As we have seen, section 916 became operative as such December 1, 1873. The statute of Texas in force at that date provided that final judgments rendered by any court of record of the State should be a lien on all the real estate of the judgment debtor situated in the county where the judg-

ment was rendered from the date of the judgment, and upon all his real estate situated in any other county from the time when a transcript of the judgment was filed for record in such other county, as provided, and that the lien should cease and become inoperative if execution were not issued upon the judgment within one year from the first date upon which the execution could by law be issued thereon. 2 Paschal's Ann. Dig. Art. 7005.

The Supreme Court of Texas decided that under this law a judgment ceased to be a lien for want of diligence, unless execution issued on it each year after it was rendered. *Bassett* v. *Proetzel*, 53 Texas, 569; *Barron* v. *Thompson*, 54 Texas, 235 ; *Anthony* v. *Taylor*, 68 Texas, 403.

In this case the judgment was rendered January 17, 1882, and execution issued thereon March 3, 1882, and no other, so far as appeared, until August 11, 1886, and if the lien of the judgment depended on the law of Texas as existing December 1, 1873, and the decisions of the Supreme Court of Texas were followed, the lien would have been lost by the failure to issue execution on it each year. By the Revised Statutes of Texas, passed in 1879, different provisions were made in relation to judgment liens. By Articles 3153 and 3154, it was provided that each clerk of the county court should keep in his office a "judgment record," in which he should record all abstracts of judgments filed for record and authenticated as required, and deliver to the judgment plaintiffs abstracts of such judgments duly certified. Article 3155 was as follows: "The abstract provided for in the preceding article shall show: 1. The names of the plaintiff and of the defendant in such judgment. 2. The number of the suit in which the judgment was rendered. 3. The date when such judgment was rendered. 4. The amount for which the same was rendered, and the amount still due upon the same. 5. The rate of interest, if any is specified in the judgment."

By Article 3157, the clerk was required to file and immediately record the abstract provided for in the preceding articles, in the judgment record, noting therein the day and hour of the record, and entering it at the same time upon the

index. Article 3158 was as follows: "The index to such judgment record shall be alphabetical, and shall show the name of each plaintiff and of each defendant in the judgment, and the number of the page of the book upon which the abstract is recorded." By Article 3159, any judgment recorded and indexed as provided should, from the date of such record and index, operate as a lien upon the debtor's real estate, which lien by Article 3160 was to continue for ten years from that date, unless the plaintiff failed to have execution issued within twelve months after the rendition of the judgment. Article 3163 made provision for recording and indexing in the same manner abstracts of judgments rendered in the United States courts. 2 Sayles' Tex. Civ. Stats. 93, Tit. 61, c. 1.

To what extent, if at all, these articles were adopted by the rules of the Circuit Court, and whether or not the lien could only be originated by compliance with the requisition as to the record and index of the abstract, was for the Circuit Court to determine in the first instance. Judgments by the common law were not liens upon real estate, but the lien arose from the power to issue a writ of *elegit* given by the statute of Westminster, 13 Edw. I, c. 18. *Morsell* v. *First Nat. Bank,* 91 U. S. 357, 360; *Massingill* v. *Downs,* 7 How. 760, 765; *Shrew* v. *Jones,* 2 McLean, 78, 80. It is argued that the writ of *elegit* and the lien resulting from the right to extend the land never obtained under the laws of Texas, while on the other hand it is said that, under the laws of Congress, this judgment was a lien throughout the jurisdiction of the Circuit Court from the date it was rendered, without any abstract being recorded and indexed by a state officer.

In *Massingill* v. *Downs,* where the state statute made the judgment a lien upon the land of the debtor in the county wherein it was recovered, and required the judgment to be recorded in other counties in order to extend the lien on land therein, it was ruled that a judgment in the Circuit Court was a lien on the debtor's land in the district without such record, or in other words, that the remedy for the enforcement of the judgment was coextensive with the process of the court. In

*United States* v. *Scott*, 3 Woods, 334, it was held by Mr. Justice Bradley, holding the Circuit Court for the Western District of Texas, (June term, 1878,) that a judgment of that court was a lien on defendant's lands throughout the district without being recorded in the several counties where they lay.

The argument is, however, that as by section 914 the practice, pleadings and forms and modes of proceeding in the Circuit and District Courts are required to conform to those of the state courts, the rule of the Circuit Court of April, 1880, adopting the "modes of proceeding prescribed by the laws of Texas" cannot refer to the modes of proceeding of that section, and must be construed to mean laws prescribing remedies upon judgments subsequent to the enactment of section 916. Hence, that no lien could originate, except in strict accordance with the law of Texas of 1879. The view taken by the Circuit Court rendered a solution of this question immaterial, but the inquiry is significant in its relation to jurisdiction.

It is unnecessary to pursue this branch of the case further. Plaintiff is to be regarded as the purchaser at the sale, and the validity of his purchase turned upon the existence of a lien, which he asserted and the defendants denied. The disposition of this issue depended upon the laws of the United States and the rules of the Circuit Court, and their construction and application were directly involved. We are of opinion that jurisdiction as resting on the subject-matter was properly invoked.

Passing to the merits, we find that the rulings of the Circuit Court in reference to plaintiff's title were not based on any ground independent of the state statute of 1879, but assumed its applicability. The object of the provision for recording abstracts of judgments and indexing the same was to apprise subsequent parties, as, for instance, intending purchasers, of the existence and character of the judgments, if a reasonable amount of care and intelligence were exercised. The abstract in this instance gave the judgment debtor's name; the number of the suit in which the judgment was rendered; its date; the amount; the rate of interest; that the whole amount was still due and unpaid; and the name of

the plaintiffs as "Deere, Mansur & Co." In all these partic-
ulars it was in accordance with Article 3155, except that it
did not give the individual names of the plaintiffs, although
in giving the firm name it gave the surname of the plaintiff
first in order. The index gave the defendant's name and the
number of the page of the book upon which the abstract was
recorded, and the plaintiffs' name as Deere, Mansur & Co.,
and this both directly and in the reverse order. The only
ground on which this abstract and index could be held insuffi-
cient was that the names of the plaintiffs were not given in
full in either abstract or index. Was this omission fatal to
the lien? The Circuit Court did not think so, and we concur
in that view.

In *Willis* v. *Smith*, 66 Texas, 31, 43, the Supreme Court of
that State said: "The object of the statute is not to encumber
the registry with full information, but to excite inquiry, and
indicate the source of full information."

It appears to us that the source of full information was so
indicated in this instance that no reasonably prudent or cau-
tious inquirer could go astray.

In *Putnam* v. *Wheeler*, 65 Texas, 522, 525, the petition
stated the names of the plaintiffs to be Royal T. Wheeler and
Harry W. Rhodes, copartners as lawyers, but without giving
the style of the firm, and the citation described the plaintiffs
as Wheeler and Rhodes. This was held sufficient, and the
Supreme Court said: "Giving the firm name of the plaintiffs
was not such defect in the citation as required the reversal of
the judgment."

Article 2281 of the Revised Statutes of Texas, prescribing
the requisites of an execution, states that it shall, among other
things, correctly describe the judgment, stating the court
wherein, and the time when, rendered, the names of the
parties, the amount actually due thereon, and the rate of
interest. In *Smith* v. *Chenault*, 48 Texas, 455, the title of the
judgment was "A. T. Chenault & Co. *vs.* Smith and Young,"
and the judgment ordered that the plaintiffs recover of the
defendants, but the names of neither plaintiffs nor defendants
were given, while the execution recited that "whereas, A. T.

Chenault and John O. McGhee . . . recovered a judgment against Elial M. Smith and Hugh F. Young," and the court held that the execution sufficiently described the parties to the judgment.

In *Hays* v. *Yarborough*, 21 Texas, 487, the judgment described the plaintiffs as "Yarborough and Ferguson," and it was held to be a sufficient description. These decisions are in harmony with the conclusion of the Circuit Court, and have not been overruled or disaffirmed so far as we are informed.

Since this writ of error was pending the Supreme Court of Texas has, indeed, held in *Gullett Gin Co.* v. *Oliver & Griggs*, 78 Texas, 182, that where the index failed to give the individual names of the defendants in a judgment, but only the firm name, it was fatally defective, and to the same effect is *Pierce* v. *Wimberly & Philips*, 78 Texas, 187, although in the latter case the full names of the plaintiffs were not given in the index. The court referred to *Nye* v. *Moody*, 70 Texas, 434, but in that case the abstract of the judgment had not been indexed at all. The distinction in importance between giving the individual names of the defendants and those of the plaintiffs is obvious.

Both parties claimed title from J. H. Payne as a common source, and defendants offered the assignment to Harrington to prove outstanding title without showing or attempting to show any connection of their title with his. The action was the statutory action of trespass to try title, (2 Sayles' Civ. Stats. Tex. Tit. 96, c. 1; Arts. 4784 to 4812,) and was not made otherwise or the issues changed by the averments of the amended petition introduced for the purpose of maintaining the jurisdiction. Under Article 4802 it was not necessary for the plaintiff to deraign title beyond a common source, and proof of a common source might be made by plaintiff by certified copies of the deeds showing defendants' chain or claim of title emanating from such common source. Defendants could not question the validity of their grantor's title at the time of the conveyance to them in a contest with plaintiff, claiming under the same grantor, unless, indeed, they claimed under a paramount title, which they had acquired or connected themselves with. This was so ruled in *Cox* v. *Hart*, 145 U. S.

376, where the decisions of the Supreme Court of Texas bearing on the point are fully cited. The assignment was properly excluded.

Defendants had pleaded (1) not guilty; (2) for allowance of value of improvements; (3) title outstanding in Harrington. Defendants offered the original deed from Payne to Cooke, dated January 2, 1886, which was objected to on the ground "that said defendants having specially pleaded an outstanding title, the defendants could not prove title in themselves." This objection was sustained and the deed excluded. Defendants also offered to prove that from January 1, 1882, until the sale to Cooke, Payne was the head of a family, and that the land was claimed and used by him as his homestead, and was therefore not subject to the judgment lien, execution, levy and sale through which plaintiff claimed. The same objection was made to this evidence and sustained.

The rule seems to be well settled that in this statutory action, if the defendant pleads his title specially, he waives the general issue, and is confined to the defence thus specially pleaded. In *Joyner* v. *Johnson*, 19 S. W. Rep. 522, the Supreme Court of Texas said : "The principle which underlies this doctrine is that when a party, either plaintiff or defendant, in an action of trespass to try title, pleads his title specially, he gives his adversary notice that he rests his case upon the title so pleaded, and it is to be presumed that he relies upon no other." *Shields* v. *Hunt*, 45 Texas, 424; *Custard* v. *Musgrove*, 47 Texas, 217; *St. Louis & Texas Railway* v. *Whitaker*, 68 Texas, 630. Apart from this, as we have held that the lien of the judgment was valid, the exclusion of the deed was immaterial. As to the suggestion in relation to the homestead, this was an affirmative defence, and could not be made under the pleadings as they stood. The plaintiff was not required to offer in chief any proof as to the homestead, in respect of which, indeed, he had been given no notice that it would be relied on, and the evidence offered by defendants was not in rebuttal of plaintiff's proof, but to establish an independent ground for invalidating the lien. No such defence was specially pleaded, while the general issue had

been waived. The reference to the homestead in the plea for the allowance of improvements had relation to that subject only, and could not be resorted to for any other purpose.

The provisions of the statutes of Texas on the subject of the allowance for improvements in actions of trespass to try title are contained in Articles 4813 to 4830, inclusive, (2 Sayles' Tex. Civ. Stat. 639,) and are set forth at length and considered in *Cox* v. *Hart*, 145 U. S. 376, 390. It must be alleged in the pleadings that the defendant and those under whom he claims have had adverse possession, in good faith, of the premises in controversy, for at least one year next before the commencement of the suit, and that he and those under whom he claims have made permanent and valuable improvements on the land sued for during the time they have had such possession. It is clear that the defendants Cooke were not in possession for twelve months before the commencement of the suit under any written evidence of title, for their deed was dated January 2, 1886, and the suit was commenced December 24 of that year; but they proposed to prove that they were in possession prior to the execution of the deed, under a verbal contract to convey, although they admitted that the consideration was not paid until the date of the deed. The evidence offered was to the effect that Cooke, after making his bargain with Payne, "immediately" entered upon possession and "commenced" the erection of improvements, and that he erected improvements of large value upon the land, in good faith, after the commencement of his possession and before he knew of any judgment lien. There is a lack of definiteness in this offer, which under the circumstances probably did not commend it to the Circuit Court, for it did not appear therefrom that any of the improvements were made before the date of the deed, or exactly when, except that it was before Cooke obtained actual knowledge of the judgment lien.

In *Elam* v. *Parkhill*, 60 Texas, 581, it is said: "To entitle a party to a recovery for the value of improvements it is essential that he be a possessor in good faith. . . . . While title is not essential upon which to predicate a claim for the value of improvements, it is necessary that the party should enter and

claim under color of title.    That is, the party must claim under an apparent title, which he in good faith believes to be the real title to the land." So in *Morrill* v. *Bartlett*, 58 Texas, 644, it was held that " a claim under the statute by a defendant sued for land, that he had made permanent and valuable improvements thereon, cannot be regarded when there is no evidence that he ever paid anything for the land, or received a deed therefor, and when he was informed of the controversy which jeopardized his possession before improving the land."

Many decisions of the Supreme Court of Texas to the same effect are cited by counsel. *House* v. *Stone*, 64 Texas, 677, 685 ; *Hatchett* v. *Conner*, 30 Texas, 104 ; *Powell* v. *Davis*, 19 Texas, 380 ; *Armstrong* v. *Oppenheimer*, 19 S. W. Rep. 520.

We are satisfied that defendants were chargeable with notice of the judgment lien, and did not as against the plaintiff occupy the position of adverse possessors, under a claim of title made in good faith prior to the deed of January 2, 1886. Moreover, no evidence was offered to prove the value of the land without regard to the improvements, an essential condition to the application of the statute. *Cox* v. *Hart, supra.* When and how far the remedy for valuable improvements may be sought in the courts of the United States, otherwise than in equity, we do not consider.

Judgment was correctly entered against all the defendants for the recovery of the title and possession of the land, and as the Mortgage Company was only interested through the deed of trust to Simpson, it was properly omitted in the recovery of damages.

It is conceded that the defendant M. E. Cooke was the wife of her codefendant, J. H. Cooke. The claim under the deed from Payne must be presumed to have been in community, it being the settled law of Texas that property purchased after the marriage is *prima facie* such, whether the conveyance be in the name of the husband or of the wife, or in their joint names. *Veramendi* v. *Hutchins*, 48 Texas, 531, 550 ; *Cooke* v. *Bremond*, 27 Texas, 457 ; *S. C.* 86 Am. Dec. 626 ; *Mitchell* v. *Marr*, 26 Texas, 329. But it does not follow that a general personal judgment, in damages for use and occupation, under

the statute, and for costs, could be rendered against Mrs. Cooke. The record disclosed nothing to justify the subjection of her separate estate to such a liability, and there was error in the judgment in this particular. *Linn* v. *Willis*, 1 Posey Cas. 158; *Garner* v. *Butcher*, 1 Posey Cas. 430; *Haynes* v. *Stovall*, 23 Texas, 625; *Menard* v. *Sydnor*, 29 Texas, 257. This does not involve the disturbance of the verdict or a reversal of the judgment in any other respect.

> *The judgment will therefore be affirmed except as to the recovery of damages and costs against M. E. Cooke, and that part thereof will be reversed as to her, with costs, and the cause remanded, with a direction to the Circuit Court to order the judgment to be modified so as to conform to the conclusion above announced. Ordered accordingly.*