TAYLOR et al. v. ANDERSON et al.†

(Circuit Court, E. D. Oklahoma. March 4, 1911.)

No. 501.

1. EJECTMENT (§ 65*)—COMPLAINT—REQUISITES.

Comp. Laws Okl. 1909, § 6122, provides that, in an action to recover real property, it shall be sufficient if defendant states in his petition that he has the legal or equitable estate therein and is entitled to possession thereof, describing the property as required by section 5667, and that defendant unlawfully deprives him of possession; it being unnecessary to state how plaintiff's estate or ownership is derived. Section 5667 provides that the land shall be described with such certainty as will enable an officer holding an execution to identify it. *Held* that, while plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of his adversary's, it is not necessary for him to suggest in his declaration how his estate or ownership was derived.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 165–174; Dec. Dig. § 65.*]

2. COURTS (§ 299*)—FEDERAL COURTS—JURISDICTION—EJECTMENT.

Where plaintiff in ejectment to recover certain lands, not only described the same, but unnecessarily deraigned his title through an Indian allotment, and alleged that it was subject to Act Cong. July 1, 1902, c. 1362, 32 Stat. 641, such allegation did not justify an inference that construction of the act of Congress would be necessarily involved in the action; and hence, on demurrer to the bill, such allegation was insufficient to show federal jurisdiction on that ground.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 841; Dec. Dig. § 299.*

Jurisdiction of cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purch. Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7; Earnhart v. Switzler, 105 C. C. A. 262.]

3. COURTS (§ 391*)—FEDERAL COURTS—FEDERAL QUESTION—UNITED STATES SUPREME COURT—REVIEW.

Where ejectment is brought to recover possession of certain Indian land in a proper state court, and defendant by his answer sets up a deed, and contends that under the proper construction of the acts of Congress with reference to allotted Indian lands the property has been legally conveyed by such deed, a federal question is presented which will justify an ultimate review by the Supreme Court of the United States on a writ of error to the highest court of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1045–1092; Dec. Dig. § 391.*]

At Law. Action by Simon Taylor and others against Joe Anderson and others. On demurrer to petition. Sustained.

Maxey & Runyan, of Muskogee, Okl., for plaintiffs.
Humphrey & Robnett, of Ardmore, Okl., for defendants.

CAMPBELL, District Judge. This is an action in the nature of an ejectment suit by the plaintiffs against the defendants for the recovery of the possession of the lands in controversy which it is alleged the defendants wrongfully withhold from them. There is no

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Writ of error dismissed in Circuit Court of Appeals for want of jurisdiction January 11, 1912.

diversity of citizenship alleged. It is alleged that the matter in dispute exceeds, exclusive of interest and costs, the sum of $5,000, and the plaintiffs contend that the facts alleged in the petition make it a suit arising under the Constitution and laws of the United States, and therefore within the jurisdiction of this court. The defendants have demurred to the petition, denying that the suit as set forth in the petition is one arising under the Constitution and laws of the United States, and contend that this court is therefore without jurisdiction to entertain the cause. That portion of the petition upon which plaintiffs rely as establishing their contention that the suit arises under the Constitution or laws of the United States is as follows:

"That plaintiffs derived title to the above-described land through one Mary Mitchell, a full blood Choctaw Indian, the allottee of said land, and to whom the Choctaw and Chickasaw Nations executed an allotment patent, approved by the Secretary of the Interior of the United States, a certified copy of said patent is attached to the original complaint in this case, and marked 'Exhibit A', and which is hereby referred to and made a part of this second amended complaint. That said patent contained the following provision: 'Subject, however, to the provisions of the act of Congress approved July 1, 1902 (32 Stat. 641).' That on account of said clause in said patent the entire act of Congress became a part of said patent, and a copy of sections 15, 16, 68, and 73 of said act read as follows:

"'15. Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided.

"'16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year; one-fourth in acreage in three years, and the balance in five years; in each case from date of patent; provided, that such land shall not be alienated by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal government for less than its appraised value.'

"'68. No act of Congress or treaty provision; nor any provision of the Atoka Agreement, inconsistent with this agreement, shall be in force in said Choctaw and Chickasaw Nations.'

"'73. This agreement shall be binding upon the United States and upon the Choctaw and Chickasaw Nations and all Choctaws and Chickasaws, when ratified by Congress and by a majority of the whole number of votes cast by the legal voters of the Choctaw and Chickasaw tribes in the manner following: The principal chief of the Choctaw Nation, and the Governor of the Chickasaw Nation, shall within one hundred and twenty days after the ratification of this agreement by Congress, make public proclamation that the same shall be voted upon at any special election to be held for that purpose within thirty days thereafter, on a certain day therein named; and all male citizens of each of the said tribes qualified to vote under the tribal laws shall have a right to vote at the election precinct most convenient to his residence, whether the same be within the bounds of his tribe or not. And if this agreement be ratified by said tribes as aforesaid, the date upon which said election is held shall be deemed to be the date of final ratification.'

"That, in open violation of the restrictions against the alienation of said land contained in the foregoing act of Congress and in the patent to said land Joe Anderson, one of the defendants in this action induced Simon Taylor, Melvin Taylor, Lues Wilson, Anderson Wilson, Lane Wilson, and Bicy Wilson to execute and deliver to said Joe Anderson an illegal deed for said land, and said illegal deed is dated July 31, 1905, and the consideration stated in said illegal deed is seven hundred fifty dollars ($750). That $750 is the total price that Joe Anderson paid for said land, which was a wholly inadequate price. That said land was in fact worth more than six times said price. That all of said plaintiffs and grantors in the illegal deed to Joe An-

derson are Indians by blood, and are wholly ignorant of land values and are in need of and entitled to the protection of said restrictions against the alienation of said land contained in said patent and in said act of Congress. That the patent to Mary Mitchell to said land was approved by the Department of Interior September 20, 1905, and the illegal deed to Joe Anderson before mentioned is dated July 31, 1905. That on the date of said illegal deed to Joe Anderson said land was not alienable under the act of Congress approved July 1, 1903 (32 Stat. 641). That, under said act of Congress, said land was allotted and the title acquired thereto. That the plaintiffs claim the title to said land and the right to the possession and rents thereof under the last-mentioned acts of Congress. That Joe Anderson and Sabitha Anderson, his wife, has since attempted to convey said land to Jesse T. Kincannon. That the plaintiffs and the grantors in the before mentioned illegal deed to Joe Anderson had no power to convey said land on the date of said illegal deed, and said illegal deed is repugnant to an act of Congress approved July 1, 1902 (31 Stat. 641), and to an act of Congress approved April 26, 1906, and is an impeachment and impairment of the title to said land of the plaintiffs derived from the United States under said act of Congress to the great property loss and damage of the plaintiffs, and is repugnant to the Constitution of the United States, and is null and void. That Mary Mitchell is a full blood Choctaw Indian. That Mary Mitchell died before July 31, 1905, leaving the plaintiffs as her sole and only heirs at law, and said heirs are full blood Choctaw Indians, and are the owners in fee of said land, and who are now, and have ever since the death of the said Mary Mitchell been, entitled to the possession of said land, and said lands are not now nor never have been alienable under the acts of Congress, approved July 31, 1902 (32 Stat. 641), and the act of Congress approved April 26, 1906, without the approval of the Secretary of the Interior, and the Secretary of the Interior has not approved the sale of said land. That the primary question to be determined in this case involves a construction of the acts of Congress above referred to, as it is the contention of the plaintiffs that the deed executed by plaintiffs to the defendant Joe Anderson is void by reason of the restriction on alienation contained in said acts of Congress, and, if plaintiffs' contention in this particular is not sustained, they must fail in this action. That it is the contention of the defendants that, notwithstanding the restriction imposed by said acts of Congress, that plaintiffs had a right to convey at the time they executed said deed, and that the defendant Joe Anderson took good title, and, if defendant's contention in this regard is sustained, the plaintiffs fail in this action, so that this case cannot be decided without a construction by the court of the acts of Congress above referred to."

By section 6122 of Snyder's Complied Laws of Oklahoma, it is provided:

"In an action for the recovery of real property, it shall be sufficient if a plaintiff state in his petition that he has the legal or equitable estate therein and is entitled to the possession thereof, describing the same as required by section 5667, and that the defendant unlawfully keeps him out of possession. It shall not be necessary to state how the plaintiff's estate or ownership is derived."

Section 5667, referred to in the foregoing section, provides that the land shall be described with such convenient certainty as will enable an officer holding an execution to identify it. By section 6123 it is provided:

"That it shall be sufficient in such action if the defendant in his answer deny generally the title alleged in the petition, or that he withholds the possession, as the case may be. But if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted."

[1] It is seen, therefore, that, while the plaintiff in an ejectment suit must recover upon the strength of his own title and not the weak-

197 F.—25

ness of his adversary's, it is not necessary for him to suggest in his petition how his estate or ownership is derived.

[2] The case of Joy v. St. Louis, 201 U. S. 332, 26 Sup. Ct. 478, 50 L. Ed. 776, was a suit in ejectment originally instituted in the Circuit Court of the United States for the Eastern District of Missouri. The plaintiff there, as in this case, set forth in detail that his title was derived through and by certain patents and acts of Congress, and was originally vested in one Louis La Beaume, through whom, by a series of mesne conveyances, the plaintiff claimed title, and that a controversy had arisen between the plaintiff and the defendants as to the proper construction or legal effect of the said letters patent and acts of Congress, and that the claim of the plaintiff as to the proper construction and legal effect thereof was disputed by the defendants, and that the construction of said patents and acts of Congress constituted a controlling question in the case upon the correct decision of which the plaintiff's title to the premises depended, and for that reason it was averred that the suit was one arising under the laws of the United States. In passing upon the question of jurisdiction, Judge Peckham, speaking for the court, says:·

"There is no diversity of citizenship in this case, and the only ground of jurisdiction claimed is that the action arises under the laws of the United States. The case is a pure action of ejectment, and the general rule in such actions, as to the complaint, is that the only facts necessary to be stated therein are that plaintiff is the owner of the premises described, and entitled to the possession, and that defendant wrongfully withholds such possession, to plaintiff's damage in an amount stated. Setting out the source of the plaintiff's title, as was done with so much detail in this case, was unnecessary, but it does not alter the case, because a claim that the title comes from the United States does not, for that reason merely, raise a federal question. It is a long-settled rule, evidenced by many decisions of this court, that the plaintiff cannot make out a case as arising under the Constitution or the laws of the United States unless it necessarily appears by the complaint or petition or bill in stating the plaintiff's cause of action. In Gold Washing Co. v. Keyes, 96 U. S. 199, 203 [24 L. Ed. 656], it was said that before the Circuit Court can be required to retain a cause under its jurisdiction, under section 5, Act of 1875 [Act March 3, 1875, c. 139, 18 Stat. 475], it must in some form appear upon the record by a statement of facts, in legal and logical form, such as is required in good pleading, that the suit is one which really and substantially involves a dispute or controversy, as to a right which depends upon the construction or effect of the Constitution, or some law or treaty of the United States. That was a case of a petition for a removal of a suit from the state to the federal court. But it has been held that whether there is a right of removal in such cases depends upon whether the Circuit Court could have exercised original jurisdiction. Third Street, etc., Co. v. Lewis, 173 U. S. 457 [19 Sup. Ct. 451, 43 L. Ed. 766]; Arkansas v. Coal Co., 183 U. S. 185 [22 Sup. Ct. 47, 46 L. Ed. 144]; Boston, etc., Mining Co. v. Montana, etc., Co.,' 188 U. S. 632, 640 [23 Sup. Ct. 434, 47 L. Ed. 626]. This original jurisdiction, it has been frequently held, must appear by the plaintiff's statement of his own claim, and it cannot be made to appear by the assertion in the plaintiff's pleading that the defense raises or will raise a federal question. As has been stated, the rule is a reasonable and just one that the complainant in the first instance shall be confined to a statement of his cause of action, leaving to the defendant to set up in his answer what his defense is, and, if anything more than a denial of plaintiff's cause of action, imposing upon the defendant the burden of proving such defense. This principle was given effect to in Tennessee v. Union & Planters' Bank, 152 U. S. 454 [14 Sup. Ct. 654, 38 L. Ed. 511]; Muse v. Arlington Hotel Co., 168 U. S. 430 [18 Sup. Ct. 109, 42 L. Ed. 531]; Third Street, etc., Co. v. Montana, etc., Co., 188 U. S.

632 [23 Sup. Ct. 434, 47 L. Ed. 626], supra. The mere fact that the title of plaintiff comes from a patent or under an act of Congress does not show that a federal question arises. It was said in Blackburn v. Portland, etc., Co., 175 U. S. 571 [20 Sup. Ct. 222, 44 L. Ed. 276], that 'this court has frequently been vainly asked to hold that controversies in respect to lands, one of the parties to which had derived his title directly under an act of Congress, for that reason alone presented a federal question.' The same principle was held in Shoshone Mining Co. v. Rutter, 177 U. S. 505 [20 Sup. Ct. 726, 44 L. Ed. 864], and also in De Lamar's Gold Mining Co. v. Nesbitt, 177 U. S. 523 [20 Sup. Ct. 715, 44 L. Ed. 872]. To say that there is a dispute between the parties as to the construction of the patent or of the several acts of Congress referred to does not raise a federal question, because a statement that there is such dispute is entirely unnecessary in averring or proving plaintiff's cause of action. His source of title, as set forth in the petition, might not be disputed, and the defense might rest upon the defense of adverse possession, as set up in the answer. If defendants contented themselves on the trial with proof of such defense, then no question of a federal nature would have been tried or decided."

In the case at bar, as in the Joy Case, supra, under the statutes of Oklahoma above-referred to, this being an action of ejectment, the only facts necessary to be stated in the petition are that the plaintiff is the owner of the premises described and entitled to the possession, and that the defendant wrongfully withholds such possession, to plaintiff's damage in the amount stated. Setting out the acts of Congress under which the land was allotted to the original allottee was unnecessary. The allegations which the plaintiffs contend show that the case arises under the laws of the United States and involves their construction are not necessary allegations in the petition, and in the Joy Case, supra, Justice Peckham says that it is a long-settled rule, evidenced by many decisions of that court, that the plaintiff cannot make out a case as arising under the Constitution or laws of the United States, unless it necessarily appears by the complaint or petition or bill in stating plaintiff's cause of action, and that it must in some form appear upon the record, by a statement of facts in legal and logical form such as is required in good pleading, that the suit is one which really and substantially involves a dispute or controversy as to a right which depends upon the construction or effect of the Constitution or some law or treaty of the United States.

If in the case at bar the answer of the defendants should set up the defense anticipated by the plaintiffs—that is, should rely upon the deed of July 31, 1905, and should contend that, under a proper construction of the acts of Congress referred to, the plaintiffs could and did legally convey the premises in controversy by such deed—then there would arise a question as to the proper construction of such acts of Congress, and a federal question would then be involved. But the defendants may not rely upon such defense. They may rely upon a deed of later date from the plaintiffs', taken at such time and under such circumstances as would render it valid. They may deny that plaintiffs' ancestor was in fact the allottee of the land, and may rely upon a deed from some other source. There are various defenses which they might set up other than that anticipated by the plaintiffs in their petition, which would not involve the construction of the acts of Congress referred to, but raise only questions under

the state laws or questions of fact. But the question raised by the demurrer must be determined from a consideration of the necessary and proper allegations of the petition, shorn of all unnecessary parts, and so considered it cannot be said to present a case arising under the Constitution or laws of the United States, hence does not state a case within the jurisdiction of this court.

[3] Should the plaintiffs hereafter commence this action in the proper state court, and the defendants there set up in their answer the defense which the plaintiffs anticipate, then a federal question will be presented which the state court in the first instance has jurisdiction to determine. If the decision of the trial court on this federal question be adverse to the plaintiffs, they may appeal to the Supreme Court of the state. If the decision of that court on the question be again adverse to the plaintiffs, they may appeal to the Supreme Court of the United States, and thus finally have the question decided by a federal court.

The following cases are relied upon by plaintiffs for authority for the jurisdiction contended for: Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844. In this case the plaintiff claimed under a patent from the United States. The court say:

"No citizenship of either party is alleged, and this is urged as a ground of reversal in this court to which the case has been brought upon a writ of error. It, however, appears very clearly that the controversy turns upon the validity of the patent from the United States under which plaintiff claims title and which was denied by the defendants. The Circuit Court for the District of California therefore had jurisdiction of the case as one arising under the Constitution and laws of the United States within the meaning of Act March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508]."

It does not appear that the question of the jurisdiction of the trial court was raised at the threshold of the case by demurrer, as in the case at bar, but the defendant answered, denying the validity of the patent, and the court holds that, where the controversy turns upon the validity of the patent from the United States, the Circuit Court of the United States has jurisdiction. Evidently this controversy did not appear until the answer of the defendant was interposed. Had the defendant demurred to the jurisdiction, under the doctrine announced in the Joy Case, supra, the demurrer should have been sustained, but having apparently consented to the jurisdiction and by his answer having attacked the validity of the patent, thus making a controversy within the jurisdiction of the court, he could not successfully attack the jurisdiction for the first time on appeal.

Cooke v. Avery, 147 U. S. 390, 13 Sup. Ct. 340, 37 L. Ed. 209. Of this case, Justice Peckham says in Joy Case:

"In Cooke v. Avery, 147 U. S. 375 [13 Sup. Ct. 340, 37 L. Ed. 209], this question was not decided. It was not referred to in the course of the opinion, and it is no authority for plaintiff's contention herein. It was simply held that there was an issue between the parties which depended upon the laws of the United States and the rules of the Circuit Court and their construction and application were directly involved."

In Cooke v. Avery, supra, referring to the defendant's contention that the court was without jurisdiction, because a federal question

was not involved, Mr. Chief Justice Fuller, speaking for the court, said:

"On the former trial of this case, defendant contended that, under a proper construction of section 916 and the rules of the Circuit Court, the laws of Texas in force in 1873 governed the judgment lien under which plaintiff claimed title, and that by those laws the lien was lost because execution had not been issued each year prior to the issue of that on which the land was sold; while plaintiff contended that the statutes of Texas enacted in 1879 governed the lien and under them the lien was not lost by failure to issue the execution each year. It is now insisted by defendants that the latter is the true view, and hence it is said that there is no real and substantial controversy arising under the laws of the United States. Clearly the right of a plaintiff to sue cannot depend upon the defense which a defendant may choose to set up, and as on the first trial defendants relied on the decision of a federal question to defeat the action, such a concession of the existence of a federal ingredient in the cause might fairly be held to bind them when they subsequently abandon it and seek to oust the jurisdiction upon the ground that there could be no real dispute as to the applicable law."

From the foregoing quotation, it is evident why Justice Peckham, in the Joy Case, held that the case of Cooke v. Avery did not support the plaintiff's contention in Joy v. St. Louis.

Spokane Falls, etc., R. Co. v. Zeigler, 167 U. S. 65, 17 Sup. Ct. 728, 42 L. Ed. 79. In this case Zeigler as plaintiff brought suit against the railway company in the superior court for Spokane county, Wash., for land taken and damages incurred by reason of the construction of a railroad across his claim. The suit was by the railroad company removed to the United States Circuit Court. It was there tried, resulting in a judgment for the plaintiff. The railroad company appealed to the Circuit Court of Appeals where the judgment was affirmed. It then appealed to the Supreme Court, where it urged that the judgment should be reversed because the plaintiff's petition in the state court did not disclose either that the parties were citizens of different states or a cause of action involving a right claimed under the Constitution or laws of the United States. In regard to this contention, the court say:

"Whether it would be competent for the plaintiff in error in the circumstances stated to challenge the jurisdiction of the Circuit Court at this stage of the controversy we need not consider, because we think that the plaintiff's statement did disclose a cause of action arising under the laws of the United States and cognizable by the Circuit Court. In his complaint the plaintiff alleged that on May 1, 1889, he was in possession as a pre-emptor, under the laws of the United States, of a tract of land containing about 80 acres, and on said date had made all the improvements and had lived on the land a sufficient length of time, and had done all other acts necessary to entitle him to a patent to the same from the United States; that the defendant company, being a corporation of the territory of Washington, on said date entered upon and seized a strip of said land 50 feet in width, and appropriated it for railroad purposes without the consent of the plaintiff, and without having compensated him therefor, and that the entry upon and seizure by the defendant of the land was under and pursuant to the laws of the territory of Washington authorizing railroad companies to appropriate land for right of way for railroad tracks. We have judicial knowledge that the authority of the territory to legislate, in respect to the right of a territorial railroad corporation to enter upon the public lands of the United States, was derived from the act of Congress entitled 'An act granting to railroads the right of way through the public lands of the United States,' approved March 3, 1875 (18 Stat. 482 [U. S. Comp. St. 1901, p. 1568]), whereby the right of way through

the public lands of the United States was granted to any railroad company duly organized under the laws of any state or territory. The plaintiff's complaint, therefore, discloses the case of a contest between a settler claiming title under the laws of the United States and a railroad company claiming a right under an act of Congress, and of such a case the Circuit Court for the District of Washington clearly had jurisdiction. Doolan v. Carr, 125 U. S. 618, 620 [8 Sup. Ct. 1228, 31 L. Ed. 844; Cooke v. Avery, 147 U. S. 375 [13 Sup. Ct. 340, 37 L. Ed. 209]."

From the necessary statement in the plaintiff's petition of the steps taken by him as pre-emptor of the public lands under the laws of the United States and the necessary allegation that the defendant was a territorial corporation, the court, as they say, judicially knew that the authority of the territory of Washington to confer the power on the railroad company to enter upon the land was derived originally from an act of Congress, and that the plaintiff's complaint disclosed a controversy of which the court had jurisdiction. None of the necessary allegations in the plaintiff's petition, in the case at bar, disclose any such controversy.

Northern Pacific Railway Co. v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575. This was a bill in equity filed by the railroad company against Soderberg in the Circuit Court of the United States for the District of Washington, praying an injunction restraining him from quarrying stone from a granite ledge from land which the railroad company claimed under the terms of an act of Congress under which its grantor acquired the right of way and certain alternate sections along its line of lands "not mineral." As a part of its bill for injunction, it alleged that the defendant had entered upon the land in controversy and begun to quarry and dispose of the granite under a mineral location made by him, claiming that such land was excepted from the general land grant under which plaintiff claimed, and the bill alleged that the question in the case was whether the land in question was "mineral land" in the sense in which that term was used in that act of Congress referred to, and that that question had not yet been determined by the department. The defendant answered, raising no issue of fact, but averred that the land was mineral land and excepted from the railroad grant by the terms of the act of Congress. The trial court sustained the contention of the defendant, and entered a decree dismissing the bill. The case was appealed to the Circuit Court of Appeals, where the decree was affirmed. The railroad company then appealed the case to the Supreme Court, where the defendant moved to dismiss the appeal for the reason that the jurisdiction of the federal court was invoked upon the ground of diverse citizenship, and that, therefore, the decree of the Court of Appeals was final, under the provisions of the Court of Appeals Act of 1891 (Act March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 547]). Regarding the contention, the court say:

"But, to impress the attribute of finality upon a judgment of the Circuit Court of Appeals, it must appear that the original jurisdiction of the Circuit Court was dependent 'entirely' upon diverse citizenship. That is not the case here. Plaintiff's bill does indeed set up a diversity of citizenship as one ground of jurisdiction, but, as it appears that its title rests upon a proper interpretation of the land grant act of 1864 [Act July 2, 1864, c. 217, 13 Stat.

365] as to the exception of nonmineral lands, there is another ground wholly independent of citizenship under that clause of section 1 of the act of August 13, 1888 (chapter 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), clothing the Circuit Court with jurisdiction of all civil suits involving over $2,000, 'and arising under the Constitution or laws of the United States.' If the case made by the plaintiff be one which depends upon the proper construction of an act of Congress, with the contingency of being sustained by one construction and defeated by another, it is one arising under the laws of the United States. Doolan v. Carr, 125 U. S. 618 [8 Sup. Ct. 1228, 31 L. Ed. 844; Cooke v. Avery, 147 U. S. 375 [13 Sup. Ct. 340, 37 L. Ed. 209]. Under the allegations of the bill, the fact that the Land Department had not determined whether the land in question was mineral or nonmineral does not involve a question of fact, as the facts are admitted, but solely a question of law whether land valuable for its granite is mineral or nonmineral under the terms of the grant. Morton v. Nebraska, 21 Wall. 660 [22 L. Ed. 639]. The fact that a patent issued pending suit is neither set up in the pleadings nor noticed in the opinion of either court. The motion to dismiss must therefore be denied."

The above suit, it is seen, was by bill in equity for injunction. The allegations of the bill as to the plaintiff's title from the government disclosed a question of law depending, as the court says, upon whether land valuable for its granite is mineral or nonmineral under the terms of the grant, so that the plaintiff's statement of its own claim disclosed the fact that a construction of the act of Congress was necessary in order to determine whether the plaintiff ever acquired title to the land in controversy. In the case at bar, the petition raises no question as to the title having originally passed to plaintiffs by virtue of the allotment of the land to their ancestor, but the federal question depends upon whether the defendants shall rely upon the deed of July 31, 1905. If they do, then, as we have seen, the construction of the act of Congress may become necessary. If they do not, and make some other defense, then it may or may not be of such character as to require the construction of the Constitution or an act of Congress.

Southern Kansas Railway Co. v. Briscoe, 144 U. S. 133, 12 Sup. Ct. 538, 36 L. Ed. 377. In this case the jurisdiction depended entirely upon the terms of a special act of Congress under which the railway company was authorized to construct its line through the Indian Territory, and cannot be said to throw any light upon the general jurisdictional question now being considered.

Smith v. Stevens, 77 U. S. 321, 19 L. Ed. 933. This was a suit in ejectment commenced in a Kansas state court, afterwards appealed to the Supreme Court of the state, and from there to the Supreme Court of the United States. During the progress of the case in the state court, the effect of certain acts of Congress and treaties relating to Indian lands came in question, and from the decision of the state Supreme Court an appeal was taken to the United States Supreme Court. The question of jurisdiction, as it arises here, was not in any way in that case. The case of Pickering v. Lomax, 145 U. S. 310, 12 Sup. Ct. 860, 36 L. Ed. 716, which is also relied upon, originated in an Illinois state court, and was appealed to the Supreme Court of that state, thence to the Supreme Court of the United States, and sheds no light upon the question here. Nor do I find anything in Barry v. Edmonds, 116

U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729, or Blackburn v. Portland Gold Mining Co., 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276, cited by plaintiffs, that sustains their contention on this jurisdictional question.

To my mind the case of Joy v. St. Louis, supra, is decisive of this case, and the demurrer therefore will be sustained, and the cause dismissed for lack of jurisdiction. It is so ordered.